### W. W. COLLIER, COUNTY TREASURER, V. WESLEY PEACOCK.

No. 846. Decided January 22, 1900.

1. **County Treasurer—Payment of Warrant—Discretion—Commissioners Court—School Fund.**

   Article 930, Revised Statutes, has no application to public school funds, the discretion conferred on the treasurer as to payment of vouchers extending only to such matters as come under the control of the commissioners court and may be referred to them for decision. (P. 258.)

2. **School Trustees—Creating Debt—Deficiency.**

   The proviso of article 3959, Revised Statutes, prohibits trustees of a school district from creating a debt in excess of the appropriation for the current year; a teacher's warrant regularly earned and approved but unpaid because of such deficiency, can not constitute a claim against an expected surplus of the fund for a subsequent year. (P. 259.)

QUESTION CERTIFIED from the Court of Civil Appeals for the Fourth District, in an appeal from Uvalde County.

*Garner & Love,* for appellant.—The county treasurer is not permitted by law to pay money out of funds to the credit of a school district for one year, on debts for teaching services for any prior year. Rev. Stats., arts. 930, 3959.

Before plaintiff is entitled to recover, he must allege and prove that the defendant, as county treasurer of Uvalde County, has in his hands funds apportioned to said school district for the scholastic year of 1893-4.   Rev. Stats., art. 3959; Bank v. March, 51 S. W. Rep., 266.

Appellee relies upon the decision of the Court of Civil Appeals in the case of Culberson v. Gilmer National Bank, 20 Texas Civil Appeals, 565.   Upon examination of that decision, however, the court will find that article 3959 · is not construed, and not even referred to.   Either this article was not called to the attention of the court, or they did not consider its construction necessary to the disposal of the case.   They dispose of the case simply by construing the constitutional provisions relating to public schools.   At the same time the court says that these constitutional provisions "might very properly be regarded as suggestive to the legislative mind of a plan, to be formulated into legislative enactment, whereby the revenue derived from the specified sources each year should be applied, exclusively to the expenses incurred that year in maintaining the schools."   The Legislature has acted upon that suggestion, and by statute prohibited trustees from creating a deficiency debt against their district.   Will our courts decide that, because the trustees violate the law and transcend their legal authority, contracts thus made in direct conflict with the statute law of our State must be upheld and enforced?   The language used by the court, above quoted, indicates conclusively that article 3959 was not called to their attention, and consequently was not considered in their decision of the case.   This article is mandatory and absolutely prohibits the creation of a deficiency against the available fund.   A contract made in violation of law is void and will not be enforced.   2 Pars. on Con., 674.

*O. Ellis* and *Clark, Ball & Fuller,* for appellee.—A school voucher regularly issued and approved, for service of a teacher, should be paid out of any funds unappropriated in the hands of the county treasurer, and its payment is not confined to those funds apportioned to the particular school district for the year in which the services were rendered. The county treasurer may be compelled, by mandamus, to pay a school voucher regularly issued and approved, for the payment of a teacher's salary, contracted and earned during a past scholastic year, out of the funds apportioned to a subsequent year then in his hands.   Const., art. 7, secs. 3, 5; Rev. Stats., art. 3938; Culberson v. Gilmer Bank, 50 S. W. Rep., 195.

In the case above cited, the Court of Civil Appeals at Dallas decides the precise question in this case.   It is a clear and cogent exposition of the appellee's right in this case to the remedy sought to be enforced. Counsel for appellant are in error when they assert that the decision does not construe or refer to article 3959 of the Revised Statutes.   This statute, among other things, provides "that trustees of a district, in making contracts with teachers, shall not create a deficiency debt against the district."   The opinion really shows that this very provision was

considered by the court. In fact, plain reference to it is made when the court uses the following language: "It is evidently contemplated that the school trustees should contract with reference to the amount of money apportioned to their districts,.and that county superintendents will approve the contracts subject to the limits of such apportionment, but all the money is not on hand usually when such apportionments are made and it may fall short, as it often does." Other portions of said opinion show a careful consideration of the entire subject. This opinion shows that a mere shortage in the school fund is not the creation of a deficiency, within the meaning of the statute. This statute evidently means that the trustees shall not enter into a contract, knowing that the funds will not be on hand to pay teachers.. However, when they enter into a contract, based in good faith upon the amount to be received and available to the school district by state apportionment and district taxation, if, from causes not anticipated, the funds actually received fall short of the original calculation, the contract is not thereby rendered void. A teacher, under such condition of affairs, is not to be deprived of his compensation, and the statute does not reach, and was not intended to reach, such class of cases, and did not have for its object such purpose. To create a deficiency debt against the district, within the meaning of this statute, the trustees in making the contract must create the deficiency, and it must be a deficiency existing at the time of making the contract, and an unexpected shortage is not a deficiency.

BROWN, ASSOCIATE JUSTICE.—In this case, the Court of Civil Appeals has certified certain questions to this court based upon the pleadings and facts, of which we make the following substantial statement:

Wesley Peacock sued W. W. Collier, county treasurer, in the District Court of Uvalde County, alleging in substance that, on the 4th day of September, 1893, he held a first-grade certificate as a teacher in the free schools of Texas, and on that day entered into a written contract with D. R. Wingate, Jr., and V. M. West, trustees of school district No. 1 of Uvalde County, Texas, by which he agreed to teach free school No. 1 in the said district for nine months, beginning on that date, for which he was to receive a salary of $125 per month, and that the contract was duly approved on the same day by the county judge, ex officio superintendent of public free schools of the said county. That plaintiff taught the school for eight months ending on May 25, 1894, and was paid his salary for each month except for the last, for which he received a voucher, duly and regularly issued by the trustees of the district on the 25th day of May, 1894, and on the same day approved by the county judge, ex officio superintendent, etc., by making the following indorsement thereon: "Approved for $125, to be paid out of any funds in the county treasury belonging to school district No. 1, Uvalde County, Texas, for the school current year 1893-94." That the

said voucher was, on the 19th day of May, 1899, approved by the county judge; ex officio superintendent, etc., of the said county, by the following indorsement: "Approved and the county treasurer of Uvalde County is hereby ordered to pay this voucher out of any funds in his hands apportioned to school district No. 1, Uvalde County."

Plaintiff's petition further alleged "that W. W. Collier, as county treasurer, has funds in his hands apportioned to said school district and unappropriated for any other purpose, amply sufficient to pay said voucher, but that said county treasurer has failed and refused to pay the same or any part thereof, and still doth;—wherefore, premises considered, plaintiff prays for the writ of mandamus against said defendant to compel him as county treasurer to perform his official duty and pay to plaintiff the amount of his said voucher aforesaid—and for judgment for costs and general relief, and as in duty bound."

The defendant filed a general demurrer and special exceptions, which were overruled by the court.

It appears from the evidence that the trustees of school district No. 1, Uvalde County, had entered into a contract with appellee to pay him $125 more than the school funds for the years 1893 and 1894 proved to be; and he now seeks to subject to his claim the surplus of the school funds of said district for the years 1898 and 1899.

"Questions.—1. Does article 930, Revised Statutes of Texas, apply to public school funds, as well as other county funds? This question is asked in view of the decision of this court in Walker v. Barnard, 8 Texas Civil Appeals, 14, in which a writ of error was refused by the Supreme Court.

"2. If such article does not apply to the school fund, is the contract made by the board of trustees to pay a salary in excess of the funds belonging to their district for the particular year legal and valid?

"This question is asked in view of article 3959, Revised Statutes, and the opinions of courts of civil appeals in the cases of Culberson v. Gilmer National Bank, 20 Texas Civil Appeals, 565, and Bank of Nocona v. March, 51 Southwestern Reporter, 266, which seem to be in conflict."

Article 930 of the Revised Statutes reads as follows: "The county treasurer shall not pay any money out of the county treasury except in pursuance of a certificate or warrant from some officer authorized by law to issue the same; and if such treasurer shall have any doubt of the legality or propriety of any order, decree, certificate, or warrant presented to him for payment, he shall not pay the same, but shall make report thereof to the commissioners court for their consideration and direction." The provisions of this article apply to such matters as come under the jurisdiction and control of the commissioners court. The voucher sued upon could not have been issued by the commissioners court nor had that court any power over it. We therefore answer that the article referred to has no application to it.

We answer the second question, that the claim sued upon does not

constitute a valid demand against the fund in the hands of the county treasurer apportioned for the support of the public free schools for the scholastic year 1893-94.

The powers and duties of school trustees, in the employment of teachers for the public free schools, are regulated by the following article of the Revised Statutes: "Art. 3959. School trustees shall determine how many schools shall be maintained in their respective school districts, and at what points they shall be located; they shall determine when the schools shall be opened and when closed; they shall contract with teachers and manage and supervise the schools subject to the rules and regulations of the county and state superintendents. They shall approve all teachers' vouchers and all other claims against the school fund of their district; provided, that trustees of districts in making contracts with teachers shall not create a deficiency debt against the district."

This article required the trustees for the school district to determine the number of free schools to be taught in that district, the points at which they were to be located, and to prescribe the terms of such schools; also to make contracts with teachers for the schools that might be authorized, but the trustees were not authorized to contract any debt which would cause a deficiency in the school fund of the district; in other words, they could not contract debts in the employment of teachers to an amount greater than the school fund apportioned to that district for that scholastic year. This limitation upon the power of the trustees in making the contract with the teachers necessarily limits the payment of the debts that might be contracted to the amount of the fund which belonged to the district for that year, and any debt contracted greater than that would be a violation of the law and constitute no claim against the district. The sum appropriated being known, and the number of schools determined, the length of the term to be taught would fix with certainty the price to be paid to the teacher, and no one need be misled about it. The trustees were authorized to expend the sum set apart to the district, but not empowered to contract a debt against the funds of future years.