CITY STATE BANK IN WELLINGTON TEXAS V. WELLINGTON INDEPENDENT SCHOOL DISTRICT ET AL.

No. 8181. Decided February 16, 1944.
Rehearing overruled March 15, 1944.
(178 S. W., 2d, Series, 114.)

*R. H. Cocke,* of Wellington, *John D. McCall, Millard Park-hurst,* and *Clarence E. Crowe,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding petitioner could not recover from delinquent maintenance taxes money it advanced to the respondent, school district, and that the State and county available school fund of the current year constituted the only funds to which petitioner could look for payment. Templeman Common Sch. Dist. v. Boyd B. Head Co., 101 S. W. (2d) 352; Collier v. Peacock, 93 Texas 255, 54 S. W. 1025; McNeill v. City of Waco, 33 S. W. 322; City of Corpus Christi v. Woessner, 58 Texas 462.

*Luther Gribble,* of Wellington, and *Mahan & Broughton,* of Childress, for respondents.

Where funds are appropriated for a specific purpose and deposited with a depositary bank, and said bank pays out said funds for any other purpose, the same constituted a misappropriation of the funds and renders the bank liable. Fidelity & Dep. Co. of Md. v. Citizens' Natl. Bank of Waco, 100 Fed. (2d) 807; Bank of Chatsworth v. Hagedorn Const. Co., 162 Geo. 488, 134 S. E. 310; Warren v. Sanger Ind. Sch. Dist., 116 Texas 183, 288 S. W 159

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

This is a suit by petitioner, City State Bank in Wellington, against Wellington Independent School District, respondent, and others, in which a trial court judgment for the district was affirmed by the Court of Civil Appeals. 173 S. W. (2d 738.

The bank's suit was for $6,474.60, the total of a number of checks drawn by the district from June 30, 1942, to August 31, 1942, against its State and county available fund to pay teachers' salaries for the scholastic year 1941-1942. The bank alleged that these several checks were indorsed by their payees and paid by it as the district's depository, although the district had no money on deposit from which the checks could be paid. It alleged, however, that the district had a maintenance tax of 50 cents on each $100.00 of taxable property in the district; that delinquent taxes due that fund for 1941-1942 and prior years exceeded $15,000.00; and that it was entitled to have its demand satisfied from that fund. To that end, it asked that the district and its officers be enjoined "from using any part of the delinquent maintenance taxes * * * for any current or future

purposes" until its demand "and other valid and unpaid maintenance obligations be paid in full' and that mandamus issue to compel the district and its officers to prosecute suits for these taxes and to deposit all collections therefrom with it, as depository.

Among other allegations, the district answered that at the time the checks sued on were issued against its State and county available funds for 1941-1942 that fund was completely expended because of unlawful withdrawals therefrom by the bank as hereinafter detailed; that the bank, as its depository, well knew that fact as well as the fact that no additional moneys would become available for that fund; that the bank further knew, when it cashed the checks, that they were wholly void because issued in violation of the statutes of Texas prohibiting a school district from contracting obligations for payment of teachers after the State and county available funds for that scholastic year have been exhausted; that the district deposited more money to the credit of its State and county available fund during the year 1941-1942 than the checks drawn by it against the fund during and for that year amounted to. It also answered specially that since all the checks sued on were issued against the State and county available fund of the district and were not issued against its local maintenance fund, they could not constitute a claim against the latter fund.

By stipulation made during the trial, the parties agreed that the checks sued on were issued by the district, as alleged by the bank, to pay the former's superintendent and teachers for the scholastic year 1941-1942, execept that three of them were to pay teachers' retirement fund assessments due by the district for that year; that they were signed by the district's secretary and countersigned by the president of its trustees; that they were duly indorsed by their respective payees and paid by the bank; that there was no money on deposit with the bank to the credit of the district's State and county available fund, either when the checks were paid or at the time this suit was filed, with which to reimburse the bank. They agreed, further, that the budget estimate of receipts to the State and county available fund for 1941-1942 was $39,440.00, but that only $38,096.71 was actually so received; that the total of all checks issued by the district for the scholastic year 1941-1942 against its State and County available fund for that year, *including those sued on*, was only $36,587.75; that disbursemnts from that fund for that year, however, totaled $38,066.18, which was explained by the fact that $7,813.90 of the disbursement "was used by the depository bank in paying checks dated prior to September 1,

1941, said checks having been issued for teachers' salaries and teachers' retirement fund assessments accruing prior to said date of September 1, 1941, and said checks showing on their face the month for which such salaries were paid by such check, all of said months being prior to September 1, 1941,"—in other words, this $7,813.90 had been applied by the bank out of the 1941-1942 State and county available fund to unpaid checks drawn by the district during the year 1940-1941 for teachers' salaries and teachers' retirement fund assessments accruing for and during the latter year. They agreed, also, that the amount of delinquent maintenance taxes due the district at the time of trial was more than $15,000.00; and that the bank had been the district's depository continuously since September 1, 1935.

The effect of the bank's three points of error is that the courts below erred in holding that it could not recover, from the district's delinquent maintenance taxes due for 1941-1942 and prior years, money advanced by it to the district in taking up the salary checks aggregating $6,474.60 which the latter had issued against its State and county available fund for the year 1941-1942. The bank's main argument in support of this contention is that its action "in cashing and holding the checks did not create a deficit or debt against the district which would be payable from future years' revenues. Such action merely constituted financing against current revenues then in process of collection and which action appeared necessary to keep the Wellington schools open and operating efficiently for the year 1941-42." Since there is not even a suggestion that the bank profited in any way from the transactions detailed or that it was inspired by any selfish motive or had any purpose other than that stated, the bank's argument is very appealing to us as it doubtless was to the courts below. However, there are other and more compelling considerations which must determine this lawsuit.

█ In the first place, to permit the bank to recover from the district's delinquent maintenance taxes on checks issued against its available school fund, under the allegations and admitted facts of this case, would be to circumvent the express provisions of Art. 2749, R. S., 1925, as well as the plainly implied prohibitions of Art. 2827, ibid. Art. 2749, supra, unequivocally provides that "trustees, in making contracts with teachers, shall not create a deficiency debt against the district." Section 1, of Art. 2827, supra, provides that State and County available funds shall be used exclusively to pay (1) teachers' and superintendents' salaries, (2) census fees, and (3) interest on short time loans to pay teachers' and superintendents' salaries when such salaries become due before funds for the current year become vailable,

and then directs that *"no loans for the purpose of payment of teachers shall be paid out of funds other than those for the then current year."* (Italics ours.) That is, no valid debt can be created against the available fund to pay teachers unless the claim can be paid out of available funds coming in for that year.

Here, according to the stipulation of the parties, the fund against which the checks sued on were drawn and which the bank actually received for 1941-1942 amounted to $38,096.71. Checks actually drawn by the district against that fund totaled $36,587.75. The checks sued on could, therefore, have been debited against that fund but for the fact that the bank had already debited that fund with a total of $7,813.90 checks drawn by the district on the bank to pay teachers' salaries and teachers' retirement fund assessments for the year 1940-1941, which checks showed that they were payable out of the available funds for 1940-1941 and not out of those for 1941-1942. Such being the occasion for the deficiency in the available fund of the district for 1941-1942, it follows that to permit the bank to recover from the maintenance tax would in effect amount to a holding that money can be taken from funds of a present year to pay teachers and superintendents for a past year, in clear violation of the above statutes. It appears that the 1940-1941 checks could not be paid from the State and county available fund received during and for that year because that fund had been exhausted, and they had become, therefore, a debt against the district, otherwise they would not have been debited by the bank to the available fund of the district for 1941-1942. See McNeill v. City of Waco, 89 Texas 83, 33 S. W. 322. They were, therefore, void and constituted no claim against any funds of the district in the hands of the bank as depository. Collier v. Peacock, 93 Texas 255, 54 S. W. 1025.

■ It is suggested that teachers making a contract or accepting a check for their services and a bank cashing the check "have a right to look not only to the State and County Available Fund for its payment, but also to the local maintenance taxes, for such is the express provision of Art. 2827-2." That proposition may be taken as true, subject to the limitations fixed by Art. 2827, sec. 2, on the right of a claimant to look to the maintenance tax for payment. That section of the article provides that "local school funds from district taxes * * * *may* be used *for the purposes enumerated for State and county funds* * * * and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees." (Italics ours.) It is significant that this statute says the maintenance funds may

be used "for the purposes enumerated for State and county funds." So, if the State and county available funds for a given year cannot be used to pay salaries of teachers for previous years, the current maintenance tax funds cannot be so used. Moreover, it is plain that the Legislature, in saying that the maintenance funds *may be used* for the purposes enumerated for the State and county available funds, meant to vest the discretion in the district's trustees to say whether and when it should be so used. Certainly the courts cannot interfere with their exercise of that discretion unless they exercise it arbitrarily. In this case the trustees elected not to resort to the maintenance tax in drawing the checks sued on but chose rather to draw them against the State and County available fund, and we cannot say that action was arbitrary, in face of the fact that that fund was ample to take care of them as well as all other checks properly chargeable to it for the year 1941-1942.

The statutes under consideration were designed in the interest of the whole people to keep our public schools out of debt for current operational costs so that they may operate at least a part of each year. That their enforcement may seem to result in injustice in isolated cases is not the responsibility of the courts nor does it relieve them of their duty to give full effect to the statutes. These limitations the trustees must respect and when they are exceeded all persons dealing with the trustees must take notice that their acts are void. Here, the bank, as depository, had actual knowledge of all the facts. It paid the checks totaling $7,913.90 and issued prior to September 1, 1941, knowing they were drawn on the 1940-1941 State and county available fund and that it would have to look to that fund for reimbursement. Nevertheless, it unlawfully charged them to the State and county available funds for 1941-1942, with actual knowledge that that act would so deplete those funds that they could not absorb all checks lawfully issued and to be issued against them for the year 1941-1942. It thereby violated an obligation imposed by its bond as depository faithfully to "disburse the school funds according to law." Hence, when it paid the checks sued on with actual knowledge of the facts as well as with constructive knowledge of the rules of law applicable thereto, it forfeited all right to complain now at the result, however unselfish and commendable may have been its purpose in paying them.

The judgments of both courts below are affirmed.

Opinion adopted by the Supreme Court February 16, 1944.

Rehearing overruled March 14, 1944.