**THE BEEKMAN CORPORATION,**
appellant,

v.

**PETROLEUM MANAGEMENT COMPANY,**
appellee.

No. 12718.

Court of Civil Appeals of Texas.

Galveston.

July 29, 1954.

Rehearing Denied Oct. 7, 1954.

Townes & Townes, W. A. MacNaughton, Houston, for appellant.

Strong, Baker & Compton, John J. O'S. Heyburn, Houston, for appellee.

CODY, Justice.

Plaintiffs are a partnership consisting of three persons who, under the name of Petroleum Management Company, are and at all material times were engaged in the oil business generally inclusive of geological consultant work, maintaining their office in Houston. On March 16, 1953, plaintiffs, in the district court of Harris County, brought this suit against defendant, a New Jersey investment corporation, which maintains its office in New York City. In their original petition, plaintiffs alleged that about the first day of June, 1952, they and defendant and certain other parties (who were represented by defendant) agreed to acquire certain oil and gas leases in Hardin County, Texas, and to operate and develop same, with plaintiffs conducting the operation and development thereof. Plaintiffs alleged that defendant had failed to pay the drilling and re-working expenses attributable to its interest in the oil and gas leases, in the sum of $9,565.58. For present purposes it is enough to state that plaintiffs based their right to recover upon express contract, partly written and partly oral.

Thereafter, on November 10, 1953, which was after the leases in question had reverted to the assignor, the defendant filed an answer and a cross-action. We deem it unnecessary to give the allegations of such answer and cross-action of defendant, or to give the substance of the further pleading.

The court, trying the case without a jury, rendered judgment against defendant and in favor of plaintiffs for the principal sum of $10,326.65, with interest at the legal rate from the date of judgment; and rendered judgment against defendant on its cross-action. Thereafter, in response to defendant's request, the court made and duly filed conclusions of fact and law, to which defendant filed no exceptions, nor did it ask for any further findings. The court's findings of fact were, in substance:

1. That about May 1, 1952, plaintiffs had an agreement with Fortune Company under which said company was to assign two certain oil and gas leases in the Sour Lake Oil Field, Hardin County, whereby plaintiffs were to operate and maintain the leases, and drill four oil wells therein, within certain specified times, and to make certain specified oil payments to their said assignor.

2. That on May 15, 1952, plaintiffs offered a portion of said leases to defendant under the terms specified by their assignor, plus an additional cash payment. Defendant accepted plaintiffs' offer, and pursuant to such agreement, defendant sold a portion of such leases to certain third persons, and retained a 20% portion for itself.

3. That on June 17, 1952, plaintiffs received the assignment of the leases.

4. That plaintiffs duly drilled the first two wells required under the assignment.

5. That about October 5, 1952, defendant raised a controversy with plaintiffs that plaintiffs had represented that only two, instead of four wells were to be drilled on the leases. At such time defendant was delinquent on the payment to plaintiffs of its share of the cost of the drilling of the first two wells, and the cost of the re-working operations, having paid a little less than $3,000.00, only.

\*     \*     \*     \*     \*

7. That on November 21, 1952, plaintiffs and defendant modified and extended the original agreement, composing all their differences. Thereunder, plaintiffs agreed to drill the third and fourth wells upon a specified basis, conditioned that defendant would immediately pay its then unpaid account on the cost of operations in the sum of $9,565.58, and would currently pay as billed to it, its 20% of the operation costs of the leases.

8. Plaintiffs in good time completed the third well, and began the fourth, but defendant failed to pay its past due account or to keep current its proportionate part of the re-working and operation costs.

9. On June 2, 1953, the leases reverted to the Fortune Company because of the failure to drill and operate according to the terms of the assignment.

10. Defendant never paid its share of the cost of drilling the first two wells, or of the re-working and operation expenses. The amount which was so chargeable to defendant, and which had been paid out by plaintiffs was $10,326.65.

(We deem it unnecessary to give the court's conclusions of law.)

Appellant has predicated its appeal upon five points; the first two of which are grouped for presentation, and in substance urge (1) that the evidence is insufficient to show that there was ever any meeting of the minds between plaintiffs and defendant in June 1952, and (2) that if there was a meeting of the minds, the preponderance of the evidence establishes that such agreement was vitiated by actions on the part of plaintiffs which, at least in law, constituted constructive fraud. We overrule said first two points.

The court, at the request of defendant, made findings of fact, and defendant made no exception to the court's findings, nor in any manner excepted thereto. Under the circumstances the appellant and the appellate court are bound by the court's findings. Evans v. Rush, Tex.Civ.App., 254 S.W.2d 799. There was evidence before the court to support the court's finding of such a contract. See City State Bank in Wel-

lington v. Wellington Independent School District, Tex.Civ.App., 173 S.W.2d 738, affirmed 142 Tex. 344, 178 S.W.2d 114. Even if it should be conceded, and we do not so hold, that the finding by the court to the effect of such contract was against the preponderance of the evidence, this would not justify setting aside such finding. Nickel v. Nickel, Tex.Civ.App., 130 S.W.2d 1085. There was also no finding of any facts by the court which would compel or even justify the conclusion by the court below that plaintiffs were guilty of constructive fraud which vitiated the agreement.

Defendant's third point in effect attacks the court's seventh finding of fact. What has been said in discussing defendant's foregoing points requires that its third point be overruled.

■ Defendant's fourth point reads as follows:

"This case should be reversed because the pleadings of the Plaintiff show that Plaintiff's action is a suit, based upon an express contract, on stated account, and there is nothing contained in the pleadings, and there is no evidence, of any particular items or debts due and owing the Plaintiff by Defendant, no pleading or evidence of any particular items purchased by Plaintiff for the account of Defendant, or the joint account of any parties, no pleading and no evidence showing particular work done or labor or accounts paid by Plaintiff for the benefit of the Defendant, the only evidence being in accordance with all pleadings of the Plaintiff, that the Defendant owed Plaintiff an account in the total sum as alleged and as testified to, and which evidence was insufficient and wholly and totally insufficient, in the absence of evidence of the particular items of account making up the total sum owed, to support a judgment in the total sum as prayed."

We overrule said point.

No exception was filed to the sufficiency of plaintiffs' pleadings. And plaintiffs' evidence, in the form of testimony by the plaintiff Seiffert, was that the partnership's records were under his supervision and that every month the plaintiffs, as operators of the leases, sent a monthly statement to each owner of an interest therein, including defendant, a copy of each invoice or charge for which such interest-owner was billed. Seiffert testified that defendant admitted receiving each monthly statement. And from the original records, Seiffert testified as to the total amount owed plaintiffs by defendant. The plaintiffs had agreed to abandon their alternative count in quantum meruit against defendant in the interest of time, and in that connection, in order to conserve time, it was agreed by defendant that it would refrain from questioning Seiffert as to the items of the account. Under the circumstances the plaintiffs made out a prima facie case that defendant owed plaintiffs a total on the account, items of which defendant had received due notice, the total amount for which the court rendered judgment. The defendant filed no exception to the court's finding of the amount so owed by defendant to plaintiffs.

■ Defendant's fifth point reads as follows:

"The Court should not have admitted in evidence testimony concerning and, a written instrument purporting to be, an assignment from Plaintiff to Defendant of a 10% interest in the leases involved herein; because said assignment was never delivered by Plaintiff and never accepted by the Defendant and therefore never became effective as an assignment or transfer to Defendant of title to an interest in realty, nor as written memorandum of any agreement between the parties."

It does not appear from defendant's point, or appear thereunder, or in connection therewith, what objection defendant urged to the admission of the written assignment in evidence. Nor does it appear what, if any, harm could have resulted to defendant, by reason of the admission into evidence of the complained-of instrument, the trial being to the court. Under said point it is made to appear by defendant that deliv-

ery of said instrument by plaintiffs to defendant was duly tendered, and that defendant refused to accept such delivery. We must infer, in the state of the record, that such tender and refusal was the legal equivalent of a delivery of said instrument. Defendant's fifth point is overruled, and the judgment of the court is affirmed.