**FRIENDSWOOD INDEPENDENT SCHOOL DISTRICT, Appellant,**

**v.**

**NATIONAL SURETY CORPORATION, Appellee.**

**No. 40.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Dec. 20, 1967.

Rehearing Denied Jan. 17, 1968.

Grant Cook, John R. Cochran, Reynolds, White, Allen & Cook, Houston, for appellant.

W. St. John Garwood, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

TUNKS, Chief Justice.

In the latter part of 1961, the voters of Friendswood Independent School District, at an election called for that purpose, authorized the District to issue $375,000.00 in bonds to be used for construction purposes. On March 10, 1962, the School District entered into a contract with I. W. Powers for the construction of its facilities. On March 13, 1962, National Surety Corporation executed and delivered to the School District a labor and material payment bond in which it guaranteed the payment to all claimants for labor and materials furnished in the construction of the facilities. It also executed and delivered its performance bond in which it guaranteed the completion of the construction in the event of the failure of Powers to do so.

The total contract price to be paid Powers for such construction was $309,033.02. The contract provided that progress payments were to be made to Powers in monthly installments, each payment representing 90% of the work done by him during the next preceding month. That is, the District was to retain 10% of the contract price until the completion of the construction.

When Powers made application to National Surety Corporation for the bonds to be issued by them, he, Powers, assigned to it his interest in the retainages to be held by the School District as security for their obligations under the bonds.

On April 8, 1963, Powers had substantially completed all of the construction called for under the contract except for an item designated therein as "Alternate No. 8." That item provided for the conversion of an existing cafeteria into a girls' dressing room at a cost of $5,200.00. On that date (April 8, 1963), the members of the school board, the school superintendent, the con-

tractor, the architect and the mechanical engineer for the job conducted a tour of the building for the purpose of making an inspection. On that occasion, it was determined that it would be impossible for the contractor to then proceed with the performance called for in Alternate No. 8 for the reason that the school was in session and the cafeteria was being used. It was therefore decided by the school board and the school superintendent, on oral recommendation of the architect, that the School District should go ahead and accept that portion of the contract which had been completed and defer the conversion of the cafeteria until a later date. That evening, the board, at an official meeting, voted to accept the new building retaining from the contract price the cost of remodeling the old cafeteria ($5,200.00), plus $500.00 to take care of the minor items on a so-called "punch list." On April 11, 1963, the District executed its check to Powers in the amount of $29,988.10, which sum represented all that remained payable to Powers under the terms of the contract, except the $5,200.00 for remodeling the cafeteria and $500.00 withheld to take care of the "punch list." That check was delivered to Powers forthwith.

It was stipulated by the School District and the bonding company that certain companies and persons furnished labor and materials to Powers in the prosecution of the construction contract, which were not paid in full for the amounts properly due them by Powers and that the bonding company was thereby required to pay claims in the amount of $18,184.72 and incurred necessary expenses of $52.70. The jury found, on sufficient evidence, that just before it made the $29,988.00 payment to Powers, the School District knew that Powers owed bills for labor and materials that had been furnished to the project. By this suit, National Surety Corporation, as plaintiff in the trial court, sought to recover from the School District those sums which it had been required to pay for labor and materials furnished in the construction of the school building. The School District, as defendant in the trial court, denied any liability for those payments and by cross-action, sought to recover from the surety company, on the performance bond, the costs which it had incurred in completing the remodeling of the cafeteria called for as Alternate No. 8 in the contract, over and above the $5,200.00 which it had retained for that purpose. The jury found that such cost had been $11,086.00. The surety company, as cross-defendant, contended that it had been relieved of its liability on its performance bond by the School District's alleged breach of its contract. The trial court rendered judgment for the surety company against the School District and Powers, jointly and severally, for the amount paid by it to laborers and materialmen and its necessary expenses, and denied the School District any recovery on its cross-action. The School District has appealed.

The School District recovered judgment over against Powers for the amount of those payments and expenses and also judgment for its cost in remodeling the cafeteria, less the $5,200.00 retained. Powers has not appealed.

The surety company as plaintiff in the trial court contended, and here contends, that the School District's payment to the contractor of the retainages withheld under the circumstances herein above set forth, was payment not authorized by the contract for two reasons. First, the contract required that the retainage be held for a period of 30 days after completion of the contract, and, secondly, the contract required that upon completion and before payment of the retainages, the contractor furnish evidence that all labor and materialmen had been paid. As noted above, the payment of the retainages to the contractor was made immediately after the School District had accepted the building and before complete performance. The contractor did not furnish evidence that all laborers and materialmen had been paid.

The School District contends that the payment made by it was authorized by a provision in the contract to the effect that payment might me made by it upon accepting the partially completed contract when its architect certified to it that the failure of the contractor to fully perform was not due to any fault on the part of the contractor. The School District also notes that its payment of the retainages to the contractor was on recommendation of its architect and contends that under such circumstances, it was authorized by the contract to so release the retainages.

The provisions of the contract which are controlling of the issue here involved, are as follows:

"Article 5. Acceptance and Final Payment

Final payment shall be due thirty (30) day after substantial completion of the work provided the work be then fully completed and the contract fully performed.

Upon receipt of written notice that the work is ready for final inspection and acceptance, the Architect shall promptly make such inspection, and when he finds the work acceptable under the Contract and the Contract fully performed he shall promptly issue a final certificate, over his own signature, stating that the work provided for in this Contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the Contractor, and noted in said final certificate, is due and payable.

Before issuance of final certificate the Contractor shall submit evidence satisfactory to the Architect that all payrolls, material bills, and other indebtedness connected with the work have been paid.

If after the work has been substantially completed, full completion thereof is materially delayed through no fault of the Contractor, and the Architect so certifies, the Owner shall, upon certificate of the Architect, and without terminating the Contract, make payment of the balance due for that portion of the work fully completed and accepted. Such payment shall be made under the terms and conditions governing final payment, except that it shall not constitute a waiver of claims."

If payment by the School District to Powers on April 11, 1963 of most of the retainages required to be withheld under the contract was not authorized by the contract, the surety company had a valid claim against the school district for the money it had been required to pay for labor and materials. Aetna Casualty & Surety Co. v. Robertson Lumber Co., Tex. Civ.App., 3 S.W.2d 895.

Furthermore, if the payment to the contractor on April 11, 1963, was not authorized by the contract, the security company was released from its performance bond. Fidelity & Deposit Co. v. Kelsay Lumber Co., 33 S.W.2d 731 (Com.App.).

The appellant, School District, in its brief, concedes the validity of the two above stated conclusions.

The appellant contends, however, that the June 11, 1963 payment was authorized by the last paragraph of Article 5 of the contract. We do not agree with appellant's contention in this respect. The last sentence of the paragraph required that the payment under the contingency therein set forth be made under the terms and conditions governing final payment. The terms and conditions as to final payment require that the payment be withheld for thirty days. This was not done. Also, the terms and conditions of final payment as set out in Article 5 include a requirement that the contractor "submit evidence satisfactory to the Architect" that labor and material bills have been paid. This,

too, was not done. Thus, even if the School District was, under the terms of the last paragraph of Article 5, authorized to make final payment before the completion of the contract, the payment at the time and under the circumstances under which it was made was in violation of the terms of the contract.

Further, we do not believe that the procedure necessary to make applicable the provisions of the last paragraph of Article 5 were complied with in that the architect never furnished the School District with any written statement attesting that the failure of Powers to complete the contract was through no fault of his own. No issue as to whether or not the architect had so certified to the School District, was submitted to the jury. Each of the parties here takes the position that the other had the burden of proof on that issue and the duty of getting a jury finding in support of his position, and that, no issue having been submitted, the contention in that respect of the defaulting party was waived. We do not think it necessary to determine who had the burden of proof because we are of the opinion that the evidence shows as a matter of law, that no written document so certifying the absence of fault on the part of Powers was ever given to the School District by the architect. The oral statement of the architect was not enough. The contract requires a "certificate." The word "certificate" denotes a written instrument, Webster's Third New International Dictionary, defines the word "certificate" as follows:

"A document containing a certified and usually official statement; a signed written or printed testimony to the truth of something (as a personal claim); * *."

See also Volume 6A, Words & Phrases, pp. 53 and 54, and 14 C.J.S. p. 111.

In fact, at one place in Article 5 of the contract where the architect's certificate is referred to, it is required that it be "over his own signature."

We therefore hold that the School District's payment to Powers on June 11, 1963 of a substantial portion of the retainages was not authorized by the contract and that such payment relieved the bonding company of its obligation under its performance bond and that because of such unauthorized payment, the bonding company acquired a valid claim against the School District for the amount that it was required to pay to laborers and material men under its payment bond. The trial court's judgment in denying the School District any recovery on its cross-action is affirmed.

This holding, however does not mean that the bonding company was entitled to recover a judgment from the School District for the amount of its payments under its bond to laborers and material men for the reasons hereinafter set forth.

The evidence showed conclusively that at the time of the making of the construction contract in question, the School District had available and not otherwise appropriated sufficient money from the sale of its bonds with which to pay the contract price:

On May 10, 1963, the bonding company, by telegram, notified the School District that it had information that Powers had received excessive payments; that it was assignee of the payments due Powers under the contract, and that if any unauthorized payments were made to Powers by the School District, it, the bonding company, would hold the District liable for any loss it, the bonding company, sustained as a result thereof. The jury found that at the time the School District received this telegram, sufficient unencumbered and unappropriated funds remained from the bond issue to pay the labor and material bills and expenses that plaintiff was later compelled to pay.

Mr. Dennis Grizzel, the District's superintendent of schools, testified that at the time the $29,000.00 payment to Powers was made, the District had left out of its bond issue "$6,700.00 and some other money." He testified that as of August 31, 1963, the District had $15,000.00 left out of the proceeds of the sale of its bonds. He further testified, however, that as of August 13, 1963, that $15,000.00 was appropriated by the District for the remodeling of the cafeteria and that the $15,000.00 was used for that purpose. There was no other testimony as to any other available funds which the District had. There was no testimony that the District had any available funds at the time of the judgment.

We hold that the plaintiff's failure to prove that at the *time of the judgment* the School District had remaining funds for the current year of the claim with which to pay its claim precludes any recovery of judgment by plaintiff against the School District.

Article 2749, Vernon's Ann.Tex.Civ.St., provides that the trustees of a school district "in making contracts with teachers, shall not create a deficiency debt against the district." In Collier v. Peacock, 93 Tex. 355, 54 S.W. 1025, decided in 1900, it was held that because of that statute, (then Article 3959) a teacher did not have a valid enforceable claim against a school district for the payment of the salary provided for in his contract when the school district, at the time of making the contract, did not have sufficient money available with which to pay all of his salary. There, the Supreme Court in commenting on the language of the article which is now Article 2749, said:

"This article required the trustees for the school districts to determine the number of free schools to be taught in that district, the points at which they were to be located, and to prescribe the terms of such schools; also, to make contracts with teachers for the schools that might be authorized. But the trustees were not authorized to contract any debt which would cause a deficiency in the school fund of the district. In other words, they could not contract debts in the employment of teachers to an amount greater than the school fund apportioned to that district for that scholastic year. This limitation upon the power of the trustees in making the contract with the teachers necessarily limits the payment of the debts that might be contracted to the amount of the fund which belonged to the district for that year, and any debt contracted greater than that would be a violation of the law, and constitute no claim against the district. The sum appropriated being known, and the number of schools determined, the length of the term to be taught would fix with certainty the price to be paid to the teacher, and no one need be misled about it. The trustees were authorized to expend the sum set apart to the district, but not empowered to contract a debt against the funds of future years."

It is to be noted that the language of Article 2749 relates to contracts with teachers and that in the case of Collier v. Peacock, supra, the court was concerned with such a contract. However, in Stephenson v. Union Seating Co., Tex.Civ.App., 62 S.W. 128, err. ref., decided in 1901, it was held that the policy of that statute as expressed by the Supreme Court in Collier v. Peacock, was not limited to suits on teachers' contracts. There, the plaintiff was the holder of warrants issued in payment for furniture furnished to certain school districts. At the date of their issuance (1896), the law permitted deficit financing for the acquisition of furniture by school districts provided that not more than 25% per year of the funds apportioned, and to be apportioned for a period of five years to such districts, could be set aside for such deficit financing. The plaintiff held validly issued warrants payable in 1896, 1897, 1898

and 1899. During the years in which the warrants were payable, there were funds available for paying them. The holder of the warrants failed to enforce them during the years in which they were payable. In 1900, the holder of the warrants filed suit seeking a writ of mandamus to compel the school district officials to set aside funds out of the then current year with which to pay his warrants. All of the funds for the years during which warrants were payable, by then had been lawfully appropriated and spent for other school purposes. In denying recovery to the holder of the warrants, the court said: "In Collier v. Peacock, 93 Tex. 255, 54 S.W. 1025, it is held that a warrant for a teacher's salary in excess of the sum apportioned to the district for the year cannot be made a charge upon the fund of a subsequent year. Article 3959 (now Article 2749) was construed as a limitation upon the power of the trustees to contract any debt which would cause a deficiency in the school fund of the district. While the article applies alone to contracts for teachers' salaries, we think the construction placed upon it by the supreme court applies with equal force to the articles controlling the purchase of school furniture."

Templeman Common School District No. 1 of Brazos County v. Boyd B. Head Co., Tex.Civ.App., 101 S.W.2d 352, was another case in which the plaintiff sued on warrants issued in payment for school equipment. The evidence showed that the school district did not have available funds with which to pay the indebtedness at the time the debt was incurred and it did not thereafter acquire such funds during the scholastic year. The court held that the policy of the law as expressed in Collier v. Peacock (supra) and Stephenson v. Union Seating Co. (supra), was applicable to contracts by school districts for the purchase of equipment.

Aldine Independent School District v. Standley (Tex.Sup.Ct.), 154 Tex. 547, 280 S.W.2d 578, is an authority which we con-sider controlling of the issue here involved. There, the School District had employed Standley under a contract for one year, to act as its tax assessor and collector at a salary of $425.00 per month. At the end of the fifth month he was discharged and another person employed to perform his duties as assessor-collector of taxes. After exhausing his administrative remedies, he filed suit on his contract for the remainder of the salary due him. The court first held that he was not a "public officer" so that he could be removed by the Board of Trustees of the District. The court then denied him any recovery on his contract of employment saying:

"Again, this Court in the case of Campbell v. Jones [Tex., 264 S.W.2d 425], supra, as late as 1954, recognized the well established rule that *valid* claims against a school district cannot be paid by the district unless funds *for the current year of the claim* are available to pay said claim at the time of *demand or judgment* upon such claim.

"Most of the above cases deal with liability of a school district upon teachers' employment contracts; however, this rule has been extended to apply to other contracts by the board of trustees. The case of Stephenson v. Union Seating Co., 1901, 26 Tex.Civ.App. 16, 62 S.W. 128, 129, wr. den., involved payment for certain school furniture." (Emphasis added.)

At another point in its opinion, the court said:

"This record showing that there were no available funds out of which plaintiff could be paid his asserted claim, the claim is void and no recovery can be had thereon."

The case of Reid v. McKinney Independent School District, Tex.Civ.App., 322 S.W. 2d 647, writ ref., n.r.e., involved a suit by a contractor against a school district based

upon an alleged breach of a construction contract. The contractor's performance of the contract was terminated by the school district before the completion of the construction. The contractor alleged that the termination was without justification. In his suit against the school district, the contractor sought to recover for lost anticipated profits under the contract and for certain additional work alleged by him to have been performed at the request of the school district. It was found that the termination of the contract was with justification. The school district admitted that it owed the contractor $3,608.27 for work done under the contract.

It was several months after the termination of the contract that the school district first had notice that the contractor was asserting a claim against it for lost profits and for alleged additional work done at the request of the school district. In the meantime, the school district had either expended or legally obligated itself to expend, all of the proceeds from the bonds except for a few hundred dollars. The trial court held that there were no funds on hand or available to the school district at the time the district first had notice or had knowledge of the contractor's claims against it, or at the time any demand was made by Reid for the payment of such claims or at the time the suit was filed and tried, and for that reason the contractor was not entitled to any recovery against the district. This holding of the trial court was affirmed by the appellate court. The appellate court cited as authority for its holding Collier v. Peacock, supra; Stephenson v. Union Seating Co., supra; Aldine Independent School District v. Standley, supra, and other authorities.

■ The appellee here challenges the construction of Article 2749, then Article 3959, as made by the Court of Civil Appeals in Stephenson v. Union Seating Co., supra. The appellee insists that the statute by its own language limits its reference to con-

tracts for the payment of teachers. Were this question presented as an original matter, that argument would be most persuasive to us. However, the construction of the court in Stephenson has remained unchallenged for more than 65 years. The Legislature has met on many occasions since the date of that opinion. The civil statutes of this State have been recodified on two occasions since that date without any substantial change in the language of that statute. Under those circumstances, the judicial construction of the statute is presumed to have been adopted by the Legislature. Cobb & Gregory v. Dies, Tex.Civ. App., 203 S.W. 438, err. ref.; National Life Co. v. Stegall, 140 Tex. 554, 169 S.W.2d 155; Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Tex. 21, 52 S.W.2d 56.

Appellee points out that in Collier v. Peacock, supra, the school district at the time of the making of the contract in question, did not have on hand sufficient funds which were legally usable in discharging the claim, and insists that such should be the test as to the validity of the claim. Insofar as the original validity of the claim may be concerned, that contention is perhaps a valid one. However, the further contention that a contract, valid at the time of its making, can support a judgment rendered at a later date when the funds originally on hand for the payment of the contract have been exhausted, is directly contrary to the holding of the Supreme Court in Campbell v. Jones, 153 Tex. 101, 264 S.W.2d 425. (A reference to the opinion of the Court of Civil Appeals in that case appearing at 257 S.W.2d 871 is of assistance in clarifying the facts involved.) In that case, a school district entered into a contract with Mrs. Jones, under the terms of which Mrs. Jones was employed as a teacher for the 1949–1950 school year. The contract was valid at the date of its execution.

Later, the members of the board of trustees, relying on an attorney's advice, erroneously decided that the contract was

not valid. On August 31, 1949, they notified Mrs. Jones that the contract was cancelled. Mrs. Jones protested and appealed to the State Superintendent of Public Instruction who, on November 10, 1949, ruled that her contract was valid. The Board appealed to the State Board of Education which also, on November 13, 1950, held the contract to be valid and ordered the district to pay the stipulated difference between the salary called for in her contract and what she had actually earned on another job. The district then appealed to the District Court of Travis County. Mrs. Jones intervened in that suit. That court, on January 22, 1952, sustained the holding of the State Board as to the validity of the contract. It was stipulated that the district had sufficient funds available for use during the 1949–1950 school year at the time of making the contract, at the time of Mrs. Jones' demand and notice of appeal to the State Superintendent and at the time he ruled the contract valid. But such funds available for use during the 1949–1950 school year had all been spent by the date of the judgment of the District Court—January 22, 1952. That judgment became final. Mrs. Jones then filed suit for recovery of her damages against the individual members of the School Board. She was successful in the District Court and the Court of Appeals affirmed. The Supreme Court, however, reversed and rendered judgment for the defendant's holding that they had acted in good faith. In outlining the facts of the case before it, the Supreme Court, 264 S.W.2d at p. 426, said:

"Respondent intervened, and on January 22, 1952, judgment was rendered affirming the action of the Board. That judgment accomplished nothing in practical effect, for the reason that the funds for the school year 1949–1950 had been exhausted for operating the schools for that year and funds appropriated for operating the school on subsequent years could not be used to pay obligations accruing during a previous year. City State Bank in Wellington v. Wellington Independent

School District, 142 Tex. 344, 178 S.W.2d 114."

█ We think that holding compels a conclusion to the effect that no judgment can be had against a school district unless funds which were available at the time the claim arose, still remain in the hands of the school district, unappropriated to other legal purposes, at the time judgment is rendered. For the claim to be valid at the time it arises, funds legally applicable to the payment of that claim must then be on hand. Even if a claim is valid and meets that condition, no court can render judgment on the claim unless at the time of the rendition of the judgment, those legally usable funds for the current year of the claim are still on hand. Aldine Independent School District v. Standley, supra. Since the evidence in this case conclusively shows that all funds available to Friendswood Independent School District during the year when this plaintiff's claim arose have been lawfully expended, it must necessarily follow that the plaintiff here is not entitled to any judgment against that District.

█ The appellee here argues that such holding as we make would permit a school district to avoid liability on valid claims against it, and thereby result in inequities to claimants. In City State Bank v. Wellington Independent School District (Tex.Sup.Ct.), 178 S.W.2d 114, the bank for the altruistic purpose of permitting a school district which was without funds to continue operation had recognized and paid warrants for its teachers' salaries. During a following year, the bank sought to require the school district to appropriate other funds to the payment of its loss. The court said:

"Since there is not even a suggestion that the bank profited in any way from the transactions detailed or that it was inspired by any selfish motive or had any purpose other than that stated, the bank's argument is very appealing to us as it

doubtless was to the courts below. However, there are other and more compelling considerations which must determine this lawsuit."

The bank was denied recovery. That is to say, where there is a conflict between the maintenance of the policy of the law as stated in the cases above cited and an equitable claim against the school district, the courts resolve that conflict in favor of the policy of the law. Furthermore, as indicated by the holdings of Campbell v. Jones, supra, and Stephenson v. Union Seating Co., supra, there are devices by which a claimant may protect itself. If it anticipates that the funds available for the payment of his claim will be appropriated to other uses, it may seek to enjoin such disposition of the funds. If the members of the school board willfully and maliciously misappropriate school funds with resulting loss to the holder of a valid claim, they, the members of the school board, may become personally liable. See also Borger Independent School District v. Dixon, Tex.Civ.App., 52 S.W.2d 505, err. ref.

That portion of the trial court's judgment awarding National Surety Corporation a recovery of damages from Friendswood Independent School District is reversed and judgment is here rendered that the surety corporation take nothing from the School District.

The contractor, I. W. Powers, has not appealed from the judgment in favor of the School District and against him. Part of that judgment against him is by way of indemnity to the School District for its liability to the surety corporation. We have now reversed and rendered the surety corporation's judgment against the School District. Under those circumstances, substantial justice requires that we reform the School District's judgment against I. W. Powers even though he has not appealed. Burton v. Roberson (Com.App.), 139 Tex. 562, 164 S.W.2d 524, 143 A.L.R. 1; American Indemnity Co. v. Martin, 126 Tex. 73, 84 S.W.2d 697; Curtis v. Carey, Tex.Civ. App., 393 S.W.2d 185, n.w.h.

The trial court's judgment in favor of Friendswood Independent School District against I. W. Powers is reformed by reducing it in amount to the extent that the School District is relieved of its liability to the surety corporation.

The trial court's judgment is in all other respects affirmed.