Spaw-Glass 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-517-CV





COMMERCIAL UNION INSURANCE COMPANY,



 APPELLANT


vs.





SPAW-GLASS CORPORATION, INC., A/K/A SPAW-GLASS HOLDINGS, INC., A/K/A 
 SPAW-GLASS CAHABA, S.A.,


 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT



NO. 490,614, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING



 




 Appellee Spaw-Glass Corporation, Inc. contracted with Judson Independent School
District to complete construction of Judson High School in San Antonio. Appellant Commercial
Union Insurance Company was the surety for Kleck Plumbing HVAC, a subcontractor on the
project whose default left certain suppliers unpaid. To mitigate damages under its performance
and payment bonds, Commercial Union funded Kleck's remaining obligations under its contract. 
Commercial Union expected to recover these expenditures from the ten percent retainage Spaw-Glass was required to withhold from Kleck under their contract. Spaw-Glass, however, released
substantial portions of Kleck's retention upon completion of the first phase of the project, making
the final payment from retention after completion of the second phase approximately $100,000
less than the obligations Commercial Union had funded.

 Commercial Union sued Spaw-Glass, claiming to be a third-party beneficiary of
the contract between Spaw-Glass and Kleck. Commercial Union claimed that Spaw-Glass' breach
of its contractual obligation to retain ten percent of the total contract price until final completion
of the project caused Commercial Union to sustain $100,000 in damages. The case was submitted
to the court on an agreed statement of facts. The trial court held that Commercial Union had no
legal or equitable claim against Spaw-Glass. We will affirm the trial court's judgment.


BACKGROUND


 The agreed statement of facts reflects that Spaw-Glass contracted to complete 
construction of the high school in March 1987; later that month it signed a contract with Kleck,
as a subcontractor, for work totalling $1,188,814. Under the subcontract, Spaw-Glass was
required to retain ten percent of the payments due Kleck until completion of the project. A second
phase of the project was added in July 1987. Rather than execute a new contract, which would
have required the school district to conduct a bidding process, the parties executed a change order
to cover the addition. The addition increased the value of Kleck's work under the contract to
$1,843,585. In exchange for executing the change order, the school district agreed to release to
Spaw-Glass retainage for the original phase of the project before completion of the second phase. 
Spaw-Glass in turn released retainage from the first phase to subcontractors who were performing
adequately. Kleck received retention payments of $70,883.90 on October 9, 1987, and
$66,833.90 on November 5, 1987. On September 22, 1988, Kleck signed a certification that all
suppliers had been paid; on September 29, 1988, it signed a final release and received the final
retention payment. At this time Spaw-Glass was unaware that Kleck had unpaid obligations on
the project and Commercial Union was unaware of the earlier retention payments. The final
retention payment due Kleck was only $43,210.23, approximately $100,000 less than the
obligations funded by Commercial Union. Disappointed that it could not recover its expenditures
from Kleck's retention, Commercial Union sued Spaw-Glass in July 1989, seeking to recover its
damages as a third-party beneficiary of the subcontract. 



DISCUSSION



Standard of Review

 When a case is submitted to the trial court on an agreed statement of facts, the
judgment will be upheld on appeal if it can be sustained on any legal theory supported by the
evidence. WesTech Eng'g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex.
App.--Austin 1992, no writ). 


The McGregor Act

 In its third point of error, Commercial Union attacks the trial court's holding that
this action is governed by the McGregor Act. See Act of May 20, 1977, 65th Leg., R.S., ch.
809, § 1, art. 5160(A), 1977 Tex. Gen. Laws 2027, 2027 (Tex. Rev. Civ. Stat. Ann. art. 5160,
since amended and repealed) ("Article 5160"). We will address this contention first, as it affects
our review of the other points of error. The McGregor Act provides a comprehensive and
exclusive statutory scheme requiring prime contractors on public projects exceeding $25,000 in
cost to purchase both a performance bond to protect the public entity owning the project and a
payment bond to protect suppliers of labor or materials. Article 5160 A. There is no dispute that
the Act governs unpaid claims of suppliers brought against the prime contractor and its surety. 
Commercial Union argues that the McGregor Act does not govern claims of a subcontractor's
surety brought against the contractor, and hence its provisions are irrelevant to this suit on a
contract. We note that the trial court did not hold that the McGregor Act governs Commercial
Union's claim. Rather, the trial court held that Kleck's suppliers were required to give notice of
their unpaid bills to Spaw-Glass and that they failed to do so. We will uphold the trial court's
decision that the notice provisions of the McGregor Act governed the claims of Kleck's suppliers.

 The McGregor Act requires unpaid claimants to give timely notice of their unpaid
claims to the prime contractor. Article 5160 B(a). Kleck's unpaid suppliers did not give Spaw-Glass the statutorily required notice. The provisions of the Act must be strictly complied with if
there is to be recovery from a payment bond; furthermore, the Act provides the exclusive remedy
for laborers or suppliers on a public project. Bunch Elec. Co. v. Tex-Craft Builders, Inc., 480
S.W.2d 42, 45 (Tex. Civ. App.--Tyler 1972, no writ). If Spaw-Glass had no liability to the unpaid
suppliers because they failed to give notice, Commercial Union had no obligation under the
payment bond to the unpaid suppliers. Spaw-Glass thus argues that Commercial Union voluntarily
paid the suppliers who did not comply with the exclusive statutory scheme for asserting their
unpaid claims against the prime contractor. 

 The statute refers to "claimants who do not have a direct contractual relationship
with the prime contractor." Article 5160 B(b). The Act defines a claimant as "anyone having
direct contractual relationship with the Prime Contractor, or with a subcontractor, to perform the
work or a part of the work, or to furnish labor or materials or both." Article 5160 C. The Act
requires that a claimant give notice to the contractor; in fact, the Act requires both notice of
unpaid claims and notice of any retainage agreement between a subcontractor and a supplier. The
purpose of these notices is to protect the prime contractor from incurring double liability. Before
the 1959 amendments adding notice provisions to the statute, a contractor might pay a
subcontractor in full, "only to find subsequently that a claim had been filed with the County Clerk
by a person or persons who had dealt only with the subcontractor. Thus the prime contractor or
his surety would have to pay the same debt twice." Keetch Metal Works of Dallas, Inc. v. Yates,
378 S.W.2d 122, 124 (Tex. Civ. App.--Dallas 1964, no writ). To correct this problem, the
legislature amended the statute to remove the contractor's liability for claims not asserted before
retainage is paid in full. Article 5160 B(b), (c). To impose liability on the contractor in the
present cause would reinstate the very evil the notice requirements were enacted to eliminate. The
trial court properly denied Commercial Union's attempt to be reimbursed for paying claims that
the contractor was not liable to pay under the McGregor Act. We overrule the third point of
error.


Contractual Duty

 In its first point of error, Commercial Union asserts that the trial court erred in
finding that Spaw-Glass owed no contractual duty to Commercial Union to withhold retention
payments to Kleck. Point of error two complains that the court erred in denying recovery when
the evidence showed that Spaw-Glass' breach caused Commercial Union damages of $100,000
plus attorney's fees. The trial court filed conclusions of law that Commercial Union was not a
third-party beneficiary of the contract between Spaw-Glass and Kleck, that Spaw-Glass had no
contractual or other legal duty to Commercial Union to withhold all retention payments until final
completion of the project, and that the evidence did not support the damages claim as the entire
retention would have been released to Kleck because Spaw-Glass had no notice of unpaid claims.

 Commercial Union's claim as a third-party beneficiary of the contract between
Spaw-Glass and Kleck rests on a mirror image theory: because Spaw-Glass was the beneficiary
of the bond contract between Kleck and its surety, Kleck's surety must then be a beneficiary of
the construction contract between Kleck and Spaw-Glass. This theory, while symmetrical, ignores
the reality of the legal relationships created by these two agreements. Spaw-Glass had certain
duties to Kleck under the subcontract; it also had certain obligations to Kleck's suppliers if Kleck
defaulted. Kleck was required to protect Spaw-Glass by obtaining bonds to guarantee its
performance and the payment of its suppliers; it entered into an agreement with Commercial
Union to supply these bonds. Neither of these contracts created any legal duty running from
Spaw-Glass to Commercial Union. Rather, Kleck purchased such bonds from Commercial Union
for the benefit of Spaw-Glass and for the benefit of Kleck's suppliers. The performance bond
specifies that "[n]o right of action shall accrue on this bond to or for the use of any person or
corporation other than [Spaw-Glass]." If suit is brought to collect on the payment bond, it
specifies that "[Spaw-Glass] shall not be liable for the payment of any costs or expense of any
such suit."

 Commercial Union relies on two earlier opinions dealing with breach of retainage
agreements to support its theory of contractual liability. In Aetna Casualty & Surety Co. v.
Robertson Lumber Co., 3 S.W.2d 895 (Tex. Civ. App.--Waco 1928, no writ), a surety sued a city
that had paid retainage early; the court held that this breach of the city's contractual obligation
relieved the surety of its liability to the city on the performance bond and allowed the surety to
collect from the city the money it had to pay out on the payment bonds. The court found it
"unimportant" that the city had no notice of unpaid claims at the time it paid out the retainage. 
Id. at 899. We note that this 1928 case predated the notice requirements enacted in the McGregor
Act in 1959. 

 In Friendswood Independent School District v. National Surety Corp., 423 S.W.2d
95, 99 (Tex. Civ. App.--Houston [14th Dist.] 1967), rev'd in part, aff'd in part, 433 S.W.2d 690
(Tex. 1968), the court relied on Aetna to hold that a school district's unauthorized payment of
retainage gave the surety a valid claim against the district for money it had been required to pay
to suppliers. The opinion does not discuss the mandatory notice provisions enacted in 1959 that
might distinguish the case from the Aetna holding. However, the jury in Friendswood found that
the school district did know of the unpaid claims before it paid out retainage to the contractor. Id.
at 98. Another distinguishing factor was that the contractor in Friendswood did not give a
certification or final release as evidence that all suppliers had been paid, as was given in this
cause. Id. at 99. We believe that, after 1959, a prime contractor who receives no notice of
retainage agreements between subcontractors and suppliers and no notice of suppliers' unpaid
claims has no duty to pay those claims or to reimburse anyone who does. We overrule the first
point of error.

 The second point of error asserts that the evidence showed the unauthorized early
release of retention payments caused Commercial Union damages of $100,000. The trial court
concluded that there was no evidence that Spaw-Glass' early release of retention payments
damaged Commercial Union because "if Spaw-Glass had not paid retention payments to Kleck of
$70,883.90 and $66,833.90 on October 9, 1987 and November 5, 1987, respectively, Spaw-Glass
would have released to Kleck all such amounts on September 29, 1988." Although we have
affirmed the trial court's holding that Spaw-Glass had no duty to Commercial Union, we address
this point of error to note that the agreed statement of facts does not establish any evidence of a
joint trust agreement or any other fact that would establish that a full retention payment to Kleck
made on September 29, 1988 would be available to Commercial Union to offset its losses. We
therefore overrule the second point of error. 



Estoppel

 In its fourth point of error Commercial Union complains of the trial court's holding
that Commercial Union is estopped from recovering from Spaw-Glass the money it paid to Kleck's
suppliers by virtue of (1) Kleck's execution of the subcontractor's certification that all suppliers
had been paid; (2) Kleck's affidavit in its final release that all claims arising from the project had
been paid; and (3) Commercial Union's failure to advise Spaw-Glass before it paid the final
retention payments that the surety had paid the claims of Kleck and that it would assert those
claims against Spaw-Glass. 

 Estoppel arises when one party has been induced to change its position for the
worse by relying on another. Estoppel then prevents the person in the wrong from asserting an
otherwise valid right. Muller v. Leyendecker, 697 S.W.2d 668, 674 (Tex. App.--San Antonio
1985, writ ref'd n.r.e.). Although we have held that Commercial Union had no legal or equitable
claims against Spaw-Glass, we will address this final point of error. Spaw-Glass was induced to
pay the final retention payment by Kleck's certification and affidavit that all its suppliers' claims
had been paid and by Commercial Union's failure to advise Spaw-Glass that it had paid any of
Kleck's claims. The trial court did not err in applying this equitable rule to defeat Commercial
Union's claims, if any. We overrule the fourth point of error.


CONCLUSION


 Having overruled all the points of error, we affirm the trial court's judgment that
Commercial Union had no legal or equitable claims against Spaw-Glass.


 Bea Ann Smith, Justice


Before Justices Aboussie, Kidd and B. A. Smith

Affirmed

Filed: June 8, 1994

Publish