## ALDINE INDEPENDENT SCHOOL DISTRICT V. L. B. STANDLEY

No. A-4904. Decided June 22, 1955.
Rehearing overruled July 20, 1955.
(280 S.W. 2d Series 578)

*Painter & Painter* and *J. H. Painter, Jr.,* all of Houston for petitioners.

The Court of Civil Appeals erred in holding that the term of office of said plaintiff, not being fixed by the Constitution, was for a period of two years; that said board of trustees did not have the power to discharge plaintiff; that the funds of said district having become exhausted he could be paid from subsequent appropriations; and that it was not necessary for plaintiff to allege and proof that funds were available and on hand to pay him at the time he was employed. Banner v. Belsterling, 104 Texas 432, 138 S.W. 571; Keenan ·v. Perry, 24 Texas 253; Templeman Common School District No. 1 v. Boyd B. Head Co., 101 S.W. 2d 352.

*Robert L. Sonfield,* of Houston, for respondent.

Odem v. Sinton Ind. Sch. Dist., 234 S.W. 1090; Depuy v. State, 106 S.W. 2d 529; Jordan, County Judge, v. Crudington, 149 Texas 237, 231 S.W. 2d 641.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a suit by respondent-plaintiff in the trial court against petitioner-defendant to recover seven months salary in the sum of $425.00 per month. The parties will be referred to as in the trial court.

Plaintiff filed this suit in a district court of Harris County, Texas, alleging that prior to February 1, 1950 he was appointed by the Board of Trustees of defendant as assessor-collector of taxes for a period of one year, beginning February 1, 1950 at a monthly salary; that he gave the bond required by the School trustees; that he took the proper oath of office and entered upon the discharge of the duties of his office. Plaintiff alleged that on March 27, 1951 the Board of Trustees adopted a resolution that plaintiff's contract be extended one year beginning February 1, 1951 at a monthly salary of $425 per month. On June 29, 1951

the Board of Trustees adopted a resolution "firing" plaintiff, and on June 30, 1951, plaintiff was paid his salary through that date, and was prevented from entering the office occupied by him as assessor-collector of taxes, and shortly thereafter the Board of Trustees employed another assessor-collector of taxes and paid to this employee a monthly salary, but has not paid plaintiff any further salary. Plaintiff first exhausted his remedies provided by appeals and hearings before the constituted school authorities. The Commissioner of Education had a hearing and denied plaintiff's claim solely upon the ground that plaintiff had neither pleaded nor proven that funds for the current year for which salary payments were sought were available to pay plaintiff's claim—even if the claim were otherwise a valid and legal claim against the defendant District. Plaintiff asked for and was granted a rehearing before the Commissioner to be given an opportunity to prove funds were available with which to pay his claim. The Commissioner adhered to his original ruling at the end of the rehearing, and upon the same ground as first given. Upon appeal to the State Board of Education, the ruling of the Commissioner was approved and upheld, and plaintiff's claim was denied. This suit followed the final ruling of the State Board of Education.

Plaintiff was denied recovery by the trial court upon a trial by the court without a jury. Findings of fact filed by the trial judge show that no funds were available out of which to pay plaintiff's claim. Upon appeal the Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment in favor of plaintiff against defendant and awarded a mandamus requiring the defendant "to perform all necessary acts for the payment of the judgment herein rendered." 271 S.W. 2d 132. In this we think the Court of Civil Appeals was in error.

Plaintiff-respondent claims that he is an officer under the provisions of Article XVI, Section 30 of our State Constitution, Vernon'n Ann. Texas Const., and that as such his term of office is fixed at two years, with no power on the part of the School Board to discharge him until the end of his term, except as is provided by Article V, Section 24, State Constitution.

Article XVI, Section 30, provides "the duration of all offices not fixed by this Constitution shall never exceed two years * * *." Article V, Section 24, provides "County Judges, county attorneys, clerks of the District and County Courts, justices of the peace, constables, and other county officers, may be removed by the Judges of the District Courts for incom-

petency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing and the finding of its truth by a jury."

Until 1905 there was no provision for school districts to employ an assessor-collector of taxes. At that time a law was passed providing that the school board shall choose from their number an assessor-collector of taxes. In 1923 that act was amended to provide for the employment of a tax assessor by an independent school district *within the discretion of the school board*. In 1945, this language was further amended to create the office of assessor-collector of taxes at the discretion of the school board. This is Article 2791, Vernon's Ann. Texas Civ. Stats., in its present form. That Article reads:

"There is hereby created the office of assessor and collector of each independent school district, whether created by special or general law, who shall be appointed by the Board of Trustees thereof, and shall have the same power and shall perform the same duties with reference to the assessment and collection of taxes for free school purposes that are conferred by law upon the assessor and collector of taxes in and for any incorporated city, town or village, * * * and he shall receive such compensation for his services as the Board of Trustees may allow, except in cities and towns provided for, not to exceed four (4) per cent of the whole amount of taxes received by him. He shall give bond in double the estimated amount of taxes coming annually into his hands, payable to and to be approved by the president of the Board, conditioned for the faithful discharge of his duties, and that he will pay over to the treasurer of the Board all funds coming into his hands by virtue of his office as such assessor and collector; provided that in the enforced collection of taxes the Board of Trustees shall perform the duties which devolve in such cases upon the city council of an incorporated city or town, the president of the Board of Trustees shall perform the duties which devolve in such cases upon the mayor of an incorporated city or town, * * *. It shall be within the discretion of the Board of Trustees of any independent school district to name an assessor of taxes who shall assess the taxable property within the limits of the independent school district within the time and in the manner provided by existing laws, in so far as they are applicable, and when said assessment has been equalized by a Board of Equalization appointed by the Board of Trustees for that purpose, shall prepare the tax rolls of said district and shall duly sign and certify same to the county tax collector, or the city tax collector as provided for in

the succeeding article. The said assessor of taxes shall receive a fee of two (2) per cent of the whole amount of taxes assessed by him as shown by the completed certified tax rolls."

Article 2792 provides, among other things, that a majority of the Board of Trustees of an independent school district may have the taxes of the district assessed and collected by either the county assessor and collector, or by the city assessor and collector of an incorporated city or town within the school district. It also provides that the Board may, if a majority desires, appoint only an assessor of taxes and have these taxes collected by either the county or city collector. The school board is given the power of appointment of its assessor and collector.

■ Thus we see that the School Board is not required to have a separate assessor and collector of its own. There is no term of office fixed for such assessor-collector of an independent school district; no provision is made for removal of such person; he is not required to take an oath of office; the bond to be given by him must be approved by the president of the school board appointing him; his salary is to be fixed by the board at not to exceed 4% of the whole amount of taxes collected by him; no qualifications which he must possess are set forth in the statute, thus leaving his qualifications to be determined by the school board, and his compensation is to be fixed by agrement between the board and the person appointed. Article 2791 provides he "shall have the same power and shall perform the same duties with reference to the assessment and collection of taxes" as conferred by law upon a city assessor and collector. The Board is required to appoint its own Board of Equalization to equalize the school taxes. Article 1042, Vernon's Ann. Texas Civ. Stats., under Title 28, Ch. 5, *Cities, Towns and Villages,* places upon the city council the power and duty to regulate by ordinance the manner of making out tax lists or inventories and appraisements of property within the city; to prescribe the oath to be taken by taxpayers when rendering their property; when and how all property shall be rendered; the number and form of assessment rolls; the duties and powers of the assessor and collector; "and adopt such measures as they deem advisable to secure the assessment of all property within the limits of said city, and collect the tax thereupon."

Article 1060a provides that Title 122 applies in so far as the same may be applicable and necessary to school districts. An examination of this title, and the manner and method of assessing and collecting taxes shows that the governing body of

the taxing district is the agency which is vested by the Legislature with the sovereign powers of the State in assessing and collecting taxes. The governing body and its agencies, such as the Board of Equalization, are charged with the duty to see that all property is rendered for taxation, and that the taxes are collected.

By the provision of Article 2780 "Said trustees shall adopt such rules, regulations and by-laws as they may deem proper; and the public free schools of such independent district shall be under their control; and they shall have the exclusive power to manage and govern said schools * * *."

Article 2748 makes the trustees a body corporate with powers of contract and to sue and be sued.

Article 2749 gives the trustees control of the public schools and public school grounds; to determine the number of schools and their location within the district; to employ and dismiss teachers, subject to appeal by the teacher to the proper superior school authorities; to manage and supervise the school and contract with the teachers, subject to the rules and regulations of the county and state superintendents; to approve all claims against the district; "provided that the trustees, in making contracts with the teachers shall not create a deficiency debt against the district."

Article 2757 provides for formation of independent school districts from common school districts by an election of the voters residing in the territory. Article 2758 provides for a Board of Trustees for such independent school district in the event the results of the election are favorable; provides that the trustees must take the constitutional oath of office which shall be filed with the county judge; to organize the board by electing one of their number as president, a secretary and a treasurer and an assessor and collector of taxes, "and such other officers and committees as shall be deemed by said board necessary."

In providing the powers of a Board of Trustees for an independent school district theretofore created by special legislative enactment, Article 2763a, Section 1 gives the school board power to "select and designate * * * its own assessor and collector of taxes in accordance with the general laws applicable to other independent school districts." By Section 2, it is provided that after its action above the school board "shall there-

after maintain and control the public free schools within said district *to the exclusion of every other authority* * * *," except the superior authorities, as provided by law. (Emphasis added.)

Article 2781 provides in part that the Board of Trustees of an independent school district may employ a superintendent, principal, teachers, *"or other executive officers in the schools therein for a term not to exceed three years* * * *"; and that all twelve months contracts made by the trustees of an independent school district with *the employees herein mentioned,* shall begin on July 1st and terminate on June 30th of the year terminating the contract. (Emphasis added).

Article 2784e provides in part that the district school trustees for an independent school district shall have the power to levy and cause to be collected the annual taxes, and provides the maximum tax rates that may be levied.

Article 2785 gives the district trustees of an independent school district power to call a tax or bond election, provide for the holding of such election, and declare the results thereof.

Article 2785a gives the Board of Trustees of two or more independent school districts the right by a two-thirds vote of each school district Boards of Trustees to consolidate the assessing and collecting of their taxes by appointing one and the same person as such assessor-collector for all participating districts, and to prescribe additional duties and qualifications of those usually required of such officers, and to fix the compensation paid, and fix the term of such assessor-collector *"for not more than two (2) years* * * *."* (Emphasis added.)

Article 2790 provides in part that when a maintenance tax has been voted by the residents of the district, the Board of Trustees shall thereafter annually levy and cause to be assessed and collected such tax at the specific rate as has been voted, or if no definite rate has been voted, they shall levy and cause to be collected each year a tax rate within the voted limit *"as it may deem judicious."* (Emphasis added.)

■ We think it apparent from a reading of the above statutes, than an assessor-collector of taxes appointed by a school board is not only not of equal power and privileges with the trustees; but, on the contrary, is only an agent or employee of such school board at its discretion. The board alone has the power to levy and cause to be collected the annual taxes and to determine

whether such office exists. No statute requires that an independent school district have a separate assessor-collector unless the Board of Trustees so desires. See Hudson v. Annear, 101 Colo. 551, 75 Pac. (2) 587; State, ex rel Gibson v. Fernandez, New Mex. Sup. Ct., 58 Pac. (2) 1197, (1, 2); 53 A.L.R. 595; 140 *Id.* 1076.

In Dunbar v. Brazoria County, 1949, Texas Civ. App., 224 S.W. 2d 738, wr. ref., it was held that a county road engineer was not under the provisions of Article V, Section 24 of our State Constitution as to his removal or discharge from his office, and Article XVI, Sections 30 as to his term of office. He had been discharged by the Commissioners' Court of Brazoria County, Texas. After quoting various definitions of a public officer, the Court of Civil Appeals summarized them by saying:

"From the above authorities, it is apparent, we think, that the determining factor which distinguishes a public officer from an employee is whether any sovereign function of the government is conferred upon the individual to be exercised by him for the benefit of the public *largely independent of the control of others.*" (Emphasis added.)

The Court affirmed the judgment of the trial court which had sustained the county's plea to the jurisdiction of the district court to hear the alleged cause of action. We refused an application for writ of error.

In the case of American Indemnity Co. v. Mexia Independent School Dist., 1932, Texas Civ. App., 47 S.W. 2d 682, wr. dism., suit was brought by the school district against the surety company upon the bond of the tax assessor-collector for his misappropriations or embezzlement. The Company defended upon the ground, among others, that the district had not proved a legal levy of the taxes so collected by the defaulting collector. In answering such contention, and after quoting a portion of the bond, the Court of Civil Appeals said:

"* * * The funds collected by Arrington were received by him by virtue of his office as tax collector and as taxes claimed to be due the district by the property owners for the use and benefit of the district, and it was his duty to account to the district for such funds, regardless of whether they were legally or illegally collected from the property owners. *He was the agent of the district in collecting the taxes,* and whatever came into his hands as such became the property of his principal * * *." (Emphasis added.)

■ It is claimed by respondent that the assessing and collecting of taxes is a part of the sovereign power of the State. That is correct, but a reading of the statutes relative to the assessment and collection of taxes, as above set forth, shows that this power is lodged by the Legislature and Constitution in the school board, and not in the office of the assessor-collector. He is but an agent or employee of the Board to discharge the clerical duties necessary to carry out the school board's powers of taxation.

In the case of Blewett v. Richardson Independent School Dist., Com. App., 240 S.W. 529, certain taxpayers of the school district were resisting the forced collection of their school taxes. Prior to 1919 the school district, by resolution each year, had requested the county assessor and collector to act for the district. In May, 1919, the board had appointed its own assessor and collector and terminated the work of the county assessor-collector. The school assessor-collector copied from the assessment sheets for state and county taxes the description of property and prepared the sheets for the school district assessment. A number of taxpayers refused to sign these sheets and were summoned before the Board of Equalization, and their assessments on their property fixed by the Board. These values were carried by the assessor-collector for the school upon his tax rolls, and the rolls again submitted to the Board of Equalization and approved by it. It was for the collection of the taxes upon such values that suit was brought by the district. Among other grounds, the taxpayers sought to avoid payment of the taxes upon the claim that there had been no valid assessment by the school district assessor-collector. Also, it was contended that since the county assessor-collector had actually made the assessment of the property, and had fixed the value of such property, taxes could be legally collected only as fixed by applying the proper rate to such county assessor's value. In overruling such contention, Judge Gallagher (judgment adopted and entered as the judgment of the Supreme Court) says:

"* * * The taking of assessment lists from the taxpayers does not in itself constitute an assessment. Such action is only the first step in making an assessment. We quote from Welty on the Law of Assessments as follows:

"'These lists, whether made out by the taxpayer or the assessor, constitute the first step in making an assessment for taxable purposes. The list, when made, does not constitute the assessment, but, as before stated, is the initial proceeding in the making of an assessment; it serves as a basis or as infor-

mation to the assessor from which he is enabled to make the assessment.'

"The statutes of this state prescribe the procedure in making an assessment for state and county purposes. They provide that, when the county assessor has secured assessment lists from the taxpayers, as far as he is able to do so, he shall make a list of all unrendered property and assess the same at its true value. He is then required to submit the assessment list to the commissioners' court for equalization, the court being required to meet for that purpose on the second Monday in May, or as soon thereafter as practicable. When that court has equalized the value of the property so listed and approved said assessment list, he is required to make out the assessment or tax roll therefrom. This roll should contain the names of all taxpayers, and a list of the taxable property of each within the county, the rate of taxes applied to such values, and the amounts thereby ascertained carried into such columns as the statute requires. He is then required to submit the same to said court as a board of equalization for final correction and approval. Such rolls are then ready to turn over to the tax collector for collection, and the work of the assessor is complete. Rev. Stats. arts. 7547, 7551, 7564, 7576, 7577, 7580, and 7582; Welty on the Law of Assessments, pp. 6, 11, and 12; State v. Farmer, 94 Texas 232, 235, 59 S.W. 541; Prentice v. Ashland County, 56 Wis. 345, 347, 14 N.W. 297; Levy v. Wilcox, 96 Wis. 127, 130, 70 N.W. 1109; Jackson Lumber Co. v. McCrimmon (C.C.) 164 Fed. 759, 763, 764."

In the case of State, ex rel Gibson v. Fernandez, supra, the question for decision was whether the office of special tax attorney for the state tax commission was a public office within the meaning of certain provisions of the New Mexico Constitution. The court held it was not such an office. After recognizing and approving the necessity of a delegation of some portion of the sovereignty to constitute a public office, the court uses language which we think is applicable in our case. "A reference to the previous statutes referred to will show that this gave the tax commission full, complete, and exclusive power, authority and jurisdiction over all that function of government necessary to be exercised (and the duty to exercise them) in collecting delinquent taxes, and left no power to be exercised by any other officer or authority. It is true the state tax commission is authorized to employ an officer to be known as 'Special Tax Attorney' with duties specified in the act, whose compensation, within a limit, is to be fixed by the state tax com-

mission, but the purpose of his employment is not to exercise any of the functions of sovereignty, all of which is by unambiguous language delegated to the state tax commission * * *". Again the Court says:

"* * * Clearly, all sovereign power affecting the collection of delinquent taxes is conferred on the commission, and the special tax attorney is an employee whose special knowledge and services are recognized by the Legislature as necessary to carry out the power and duties conferred. The language of the act not only confers the exclusive power and duty on the state tax commission to collect delinquent taxes, but states the object of the employment of a special tax attorney is for the purpose of carrying out that power and duty; which, inferentially, fixes his status as an employee of the state tax commission without possessing any portion of the sovereign power of the state."

We hold that respondent is not a "public officer" within the contemplation of Article V, Section 24, or Article XVI, Section 30 of our State Constitution. To hold that an assessor-collector of taxes for a school district, once appointed to that office, must hold office for two years unless removed by the district judge as provided in Article V, Section 24 of our State Constitution would unduly hamper the Board of Trustees in its control of the schools of its district. Also, it would be contrary to what we think are the terms and provisions of the statutes above quoted—particularly those statutes giving to the school board the discretion to have the district taxes assessed and collected by either the county or city tax assessor-collector.

Respondent relies upon cases such as the Blewett case, supra; Odem v. Sinton Independent School Dist., Com. App., 234 S.W. 1090 and Pruitt v. Glen Rose Independent School Dist. No. 1, 126 Texas 45, 84 S.W. 2d 1004 which hold that the office of assessor-collector of an independent school district is an office of emolument under Article XVI, Section 40, State Constitution, so as to prevent it being filled by one holding another office of emolument in the state. In no one of these opinions is it held that one holding such office is a public officer of this State, within the terms of Article V, Section 24, or Article XVI, Section 30. In fact that matter is not discussed in any of these opinions.

Respondent also relies upon the cases of City of Paris v. Cabiness, 1906, Texas Civ. App., 98 S.W. 925, no writ history; City of Houston v. Estes, 1904, Texas Civ. App., 79 S.W. 848, error denied; and other cases involving the right to discharge

a policeman, or where the person discharging the policeman was not authorized by the city charter to exercise such power. City policemen are expressly declared by the provisions of Article 36, Vernon's Ann. Code of Crim. Procedure of Texas, to be "peace officers," and peace officers are expressly declared to be included within the general term "officers" by Article 50, Vernon's Ann. Code of Crim. Procedure of Texas. Both these statutes were operative when all the above cases were decided.

Respondent further relies upon the cases of Knox v. Johnson, 1940, Texas Civ. App., 141 S.W. 2d 698, wr. ref., and Dorenfield v. State, 123 Texas 467, 73 S.W. 2d 83. In the case of Knox v. Johnson the court points out that the officer involved therein was expressly required by Article IV, Section 24 of the State Constitution to keep account of all moneys received and disbursed by him; to make semi-annual reports thereof to the Governor and was given other duties and responsibilities of a statewide nature; that he was required to take the constitutional oath of office, and to make a bond to be approved by the Governor; that in the statutes which set forth his power and duties "he is expressly and specifically treated and referred to as an officer of the state."

In the case of Dorenfield v. State, supra, the court points out that the office involved was on the Texas Relief Commission, which was a statewide agency, provided for by the Legislature under a constitutional amendment enacted by the voters of the State. The facts in the case at bar are not similar to the cases upon which respondent relies.

■ Respondent not being a "public officer," and the statutes not making any provision for his removal from office, he is subject to be removed by the power appointing him, to-wit, the Board of Trustees, subject to his right to appeal to the superior school authorities. Kelm v. United States, 177 U.S. 290, 20 Sup. Ct. 574, 44 L. Ed. 774; Neeper v. Stewart, 1933, Texas Civ. App., 66 S.W. 2d 812, wr. ref.; Kennon v. Schlesinger, 1944, Texas Civ. App., 182 S.W. 2d 373, wr. ref., w.o.m. Respondent had presented his appeal to the school authorities, and they have denied respondent's claim for his salary.

■ It has been held for many years that the trustees of a school district cannot make a contract for the employment of teachers to an amount greater than the school funds belonging to the district for that year; and that any debt contracted greater than that would be a violation of law, and constitutes no claim

against the district. Collier v. Peacock, 1900, 93 Texas 255, 54 S.W. 1025; Warren v. Sanger Independent School Dist., 1926, 116 Texas 183, 288 S.W. 159; City State Bank in Wellington v. Wellington Independent School Dist., 1944, 142 Texas 344, 178 S.W. 2d 114; Campbell v. Jones, 1954, 153 Texas 101, 264 S.W. 2d 425; Flatonia Independent School Dist. v. Broesche, 1943, Texas Civ. App., 176 S.W. 2d 223, wr. ref., w.o.m.; Arts. 2749 and 2827, Vernon's Ann. Texas Civ. Stats.; 37 T.J. 972, *Schools,* Sec. 100. The reason for this rule of law is well set out in the above cases. Also it is said in the case of Fikes v. Sharp, Texas Civ. App., 112 S.W. 2d 774, wr. ref., that "the facts that these common school districts are supported largely by annual apportionments from the public free school funds; that they also derive their revenue from local taxation, the rate of which may be changed from year to year by the electorate; that they are subject to reclassification from year to year by the county authorities; and that their scholastic population may vary from year to year in a manner seriously to affect their revenues; are considerations which we believe strongly point to a legislative intent that contracts binding upon their future revenues should be limited to a one-year period."

In the City State Bank in Wellington case, supra, enough funds had been collected from the current year's taxes with which to pay the teachers' salaries for the current year. It was the warrants issued to the teachers for their salaries which the City State Bank held, and which it was seeking to collect. However, there were no funds on hand to pay said warrants due to the fact that all current funds had been paid out, even though this court held some $7,800 of current funds had been illegally applied to pay teachers' salaries for a previous year. Even under those circumstances, the Bank was denied recovery upon the warrants for the current year. The basis for the holding was that no funds were available out of which such warrants could be paid. This Court said:

"The statutes under consideration were designed in the interest of the whole people to keep our public schools out of debt for current operational costs so that they may operate at least a part of each year. That their enforcement may seem to result in injustice in isolated cases is not the responsibility of the courts nor does it relieve them of their duty to give full effect to the statutes. These limitations the trustees must respect and when they are exceeded all persons dealing with the trustees must take notice that their acts are void * * *."

Again, this Court in the case of Campbell v. Jones, supra, as late as 1954, recognized the well established rule that valid claims against a school district cannot be paid by the district unless funds for the current year of the claim are available to pay said claim at the time of demand or judgment upon such claim.

Most of the above cases deal with liability of a school district upon teachers employment contracts; however, this rule has been extended to apply to other contracts by the board of trustees. The case of Stephenson v. Union Seating Co., 1901, Texas Civ. App., 62 S.W. 128, wr. den., involved payment for certain school furniture. In its opinion reversing a judgment of the trial court in favor of the Seating Company the Court of Civil Appeals said:

"It is held that a warrant for a teacher's salary in excess of the sum apportioned to the district for the year cannot be made a charge upon the fund of a subsequent year. Article 3959 (now article 2749) was construed as a limitation upon the power of trustees to contract any debt which would cause a deficiency in the school fund of the district. While the article applies alone to contracts for teachers' salaries, we think the construction placed upon it by the supreme court applies with equal force to the articles controlling the purchase of school furniture."

The Court of Civil Appeals quoted the above portion of the opinion in the case of Templeman Common School Dist. No. 1 of Brazos County v. Boyd B. Head Co., 101 S.W. 2d 352, no writ history. This case involved payment for two septic toilets purchased by the school district. In reversing a judgment of the trial court for the holder of the warrants issued in payment for such toilets, and rendering a judgment in favor of the school district, the Court said:

"The Supreme Court refused a writ of error in that case. This seems to be the logical construction to be placed on the statute, for its purpose, at least in part, is to avoid a dissipation in advance of the funds to be appropriated for the support of the school during subsequent years and thus render more certain the maintenance of a public free school in each district for at least six months in each year, as called for in article 7, sec. 3, of the Constitution; and, if in keping with that purpose a deficiency debt cannot be created in the employment of a teacher, the one indispensable essential of a school, it reasonably follows that such a deficiency cannot lawfully be created in the purchase of equipment. See in this connection 37 Texas Jur. 972;

Warren v. Sanger Independent School Dist., 116 Texas 183, 288 S.W. 159.

"Since the school district did not, at the time the contract was entered into, nor during that scholastic year, have available or accruing to it funds necessary to meet the obligation, the trustees were without authority to incur the debt."

This record showing that there were no available funds out of which plaintiff could be paid his asserted claim, the claim is void and no recovery can be had thereon.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion delivered June 22, 1955.

Associate Justice Wilson, dissenting.

Rehearing overruled July 20, 1955.