

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 29, 1992

Mr. Lionel R. Meno
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. DM-132

Re: Interpretation of the prior continuous employment provision of the nepotism statute, V.T.C.S. article 5996a, section 1(b), and related questions (RQ-268)

Dear Commissioner Meno:

You ask a number of questions about the Texas nepotism law, V.T.C.S. article 5996a, which prohibits school district officers and board members from voting for or confirming the employment of certain relatives[1] of such officers and board members.

Several of your questions relate to a particular set of facts. You describe a situation in which a man had been a school district employee for several years before 1990. In June of 1990 he was turned down for two different promotions. In March of 1991 he applied for another promotion, but a different person was selected for the position on March 12, 1991. Based on these three promotion denials, the employee filed three claims with the Equal Employment Opportunity Commission (EEOC) and an internal grievance with the school district. Subsequently, the employee has filed an action against the school district in federal court, alleging that the district illegally discriminated against him by not promoting him to the various promotions he sought. The federal lawsuit supersedes the employee's EEOC and internal grievance claims. On May 4, 1991, the employee's mother was elected to the school board.

Your first question is whether the man could have retained a promotion made in June of 1990 in light of his mother's election to the school board in May of

---

[1]The nepotism statute specifically prohibits school district officers and board members from voting for, or confirming the employment of any person related within the second degree by affinity (marriage) or within the third degree by consanguinity (blood) to any office or board. Article 5996h, V.T.C.S., instructs how to calculate degrees of affinity and consanguinity.

1991. Under section 1(b) of article 5996a, an employee related to a school board member may retain his position under certain circumstances:

> Nothing herein contained, nor in any other nepotism law contained in any charter or ordinance of any municipal corporation of this State, shall prevent the appointment, voting for, or confirmation of any person who shall have been continuously employed in any such office, position, clerkship, employment or duty for the following period prior to the election or appointment, as applicable, of the officer or member related to such employee in the prohibited degree:
>
> (1) at least 30 days, if the officer or member is appointed;
>
> (2) at least six months, if the officer or member is elected at an election other than the general election for state and county officers; or
>
> (3) at least one year, if the officer or member is elected at the general election for state and county officers.

In short, an employee may retain a position he assumed before his relative's election or appointment as long as the employee has served in that position for the length of time required by section 1(b). You advise that the mother of the employee in question was elected at an election other than the general election for state and county officers; accordingly, the six-month prior continuous service requirement set forth in section 1(b)(2) applies to this situation. The nepotism law thus would permit the employee to retain a position he had assumed in June of 1990.

Your second question is whether the son could have retained a position he assumed in March of 1991. Because the son would not have held such a position for six months before his mother's election, the nepotism law would prevent his continued employment in that position.

Your third question is whether the board, with the mother serving as a member, may promote the son to a higher-paid position. Section 1(c) of the nepotism law provides an answer to your question:

> When a person is allowed to continue in an office, position, clerkship, employment, or duty because of the operation of

Subsection (b) of this section, the Judge, Legislator, officer, or member of the governing body who is related to such person in the prohibited degree shall not participate in the deliberation or voting upon the appointment, reappointment, employment, confirmation, reemployment, change in status, compensation, or dismissal of such person, if such action applies only to such person and is not taken with respect to a bona fide class or category of employees.

Thus, the board may appoint the son to a higher-paid position as long as his mother does not participate in the deliberation or voting. *See* Attorney General Opinion JM-1188 (1990) at 1-2.

Your final question in regard to this particular set of facts is as follows:

May a Texas school district compromise and settle a grievance, a complaint, or a lawsuit by hiring or promoting, or placing an employee in a position otherwise prohibited by the Texas nepotism statutes? In that regard, can the employee be awarded back pay or compensation as a part of a compromise and settlement when such pay or compensation is prohibited by the Texas nepotism statutes?

We limit our answer to this question to the facts presented here. If the school board determines in good faith that the employee has a legitimate discrimination claim, the board can decide whether to settle the claim by agreeing to pay back wages. *See* Attorney General Opinion H-1186 (1978) at 3. Accordingly, if the board determines that the employee has a legitimate claim with respect to either of the two promotions for which he applied in June 1990, the board may agree to pay back wages for the period beginning at the time the employee would have taken the promotion to the present. If the board determines that the employee has a legitimate claim with respect to the promotion for which he applied in March 1991, on the other hand, the board may agree to pay back wages only for the period beginning at the time the employee would have taken the promotion through the end of the pay period after his mother was elected to the school board.[2] Because of

---

[2]We assume that this person is an at will employee and not a contract employee. Thus, we need not answer any question about the payment of back wages under a contract entered into before his mother became a trustee. *See infra* p. 7 (answering your seventh question, concerning at will and contract employees).

the compensatory nature of a back pay settlement, Annot. 21 A.L.R. FED. 472, 485 (1974) (awarding back pay under the Equal Employment Opportunities Act), the nepotism statute requires the employee's mother to abstain from participating in the deliberation or voting on a back pay settlement. *See* V.T.C.S. art. 5996a, § 1(c).

The school board also may agree, as part of a settlement, to promote the employee to either of the positions it refused him in June 1990. Such a promotion would be a prospective promotion. Pursuant to the nepotism statute, the employee's mother cannot participate in the board's deliberation and voting on the employee's promotion. *See id.*

The remaining questions you pose arise from various fact situations, all of which differ from the facts underlying the first four questions. Your fifth question is whether a school board employee may retain his position after he marries a relative of a board member and thereby establishes a relationship within the scope of the nepotism law. The nepotism law applies to relationships that arise during the course of an individual's employment. Attorney General Opinions V-785 (1949); O-1408 (1939); Letter Opinion No. 89-53 (1989). The nepotism law does allow a governmental body to retain an employee related to a board member if the employee has sufficient prior continuous service. In the case of an individual related to a school board member, the individual must have been employed for six months before the election of the related board member. *See* V.T.C.S. art. 5996a, § 1(b)(2). Significantly, under the nepotism statute, prior continuous service is the time served before the board member's election, not the time served before the marriage. *See Bean v. State*, 691 S.W.2d 773 (Tex. App.--El Paso 1985, writ ref'd); *see also* Attorney General Opinion DM-2 (1991) (explaining prior continuous service requirement).

Your sixth question is whether the nepotism statute applies to campus principals since a campus principal exercises discretion over all appointments to his or her campus. Under section 13.352 of the Education Code, each public school's principal shall "approve all teacher and staff appointments for that principal's campus from a pool of applicants selected by the district or of applicants who meet the hiring requirements established by the district, based on criteria developed by the principal after informal consultation with the faculty." Educ. Code § 13.352(d)(1). This office has construed section 13.352(d)(1) to authorize public school principals to approve all teacher and staff appointments on their campuses. *See* Attorney General Opinion DM-27 (1991).

You contend that section 13.352(d) of the Education Code "has vested a campus principal with powers of a public officer and the nepotism laws apply to the principal and those same laws continue to apply to the board members. [You also contend] that the governing board of a school district can hire a person related to a campus principal within a prohibited degree, but the person may not be hired to serve on the campus of the principal who is related to the applicant within the prohibited degree." In the past, this office has concluded that a person with a role in the hiring process similar to that of a campus principal shares joint control over the hiring of personnel and therefore is an officer of the state subject to the nepotism law. *See* Attorney General Opinion MW-56 (1979); Letter Advisory No. 156 (1978). However, in 1981 the Eastland Court of Civil Appeals expressly overruled Attorney General Opinion MW-56, and we believe the court's decision overrules as well the reasoning in Letter Advisory No. 156. *See Pena v. Rio Grande City Consol. Indep. Sch. Dist.*, 616 S.W.2d 658, 660 (Tex. Civ. App.--Eastland 1981, no writ). *But cf.* Attorney General Opinion JM-91 (1983).

In *Pena*, the court considered whether the superintendent of an independent school district is an officer of the school district subject to the statutory prohibition against official nepotism. *Pena*, 616 S.W.2d at 658. The court found that under sections 23.26 and 23.28(a) of the Texas Education Code the board of trustees of an independent school district has the "exclusive right and sole legal authority to appoint or employ teachers," despite the fact that the superintendent could recommend to the board teachers the board should appoint. *Id.* at 659. The *Pena* court pointed out, however, that the board need not follow the superintendent's recommendations; furthermore, even if the board consistently follows the superintendent's recommendations, the board's exclusive authority cannot be abrogated or limited thereby. *Id.* Thus, relying on the indicia of public officers articulated in *Aldine Independent School District v. Standley*, 280 S.W.2d 578 (Tex. 1955),[3] the *Pena*

---

[3]In *Aldine*, the Supreme Court of Texas considered whether a school district tax assessor-collector that the board of trustees appointed was a public officer. 280 S.W.2d at 580. The *Aldine* court stated that in determining whether a person is a public officer, the decisive factor is "'whether any sovereign function of the government is conferred upon the individual to be exercised by him for the benefit of the public *largely independent of the control of others.*'" *Id.* at 583 (quoting *Dunbar v. Brazoria County*, 224 S.W.2d 738, 740 (Tex. Civ. App.--Galveston 1949, writ ref'd)) (emphasis added by supreme court). The court relied on several indicia of public office to determine that the tax assessor-collector was not independent of the board's control, and thus was not an officer. *Id.* at 580-85. First, the board of trustees has the power to appoint its assessor-collector. Second, the assessor-collector had no fixed term of office. Third, no constitutional or statutory provisions provide for the tax assessor-collector's removal; rather, the board may remove the assessor-collector whenever it wishes (subject to the assessor-collector's right to appeal to a higher authority). Fourth, the assessor-collector is not required to take an oath of office. Fifth, the board is authorized to determine the assessor-collector's

court found that the superintendent did not act largely independent of the board's control and therefore was an agent of the board, not a public officer, for purposes of the nepotism statute.  616 S.W.2d at 660.

In our opinion, while each principal has authority to *approve* all teachers and staff personnel assigned to the school, he or she lacks authority to *hire* anyone.  The principal's authority is more like veto power.  Hiring actually is done by the school board, which retains the power to appoint a pool of applicants, or to establish the hiring criteria.  Additionally, despite section 13.352(d)(1)'s grant of power to principals, nothing in the Education Code abrogates the school district's board of trustees' "exclusive power to manage and govern" public schools in the district, nor does any provision abrogate the board's power to employ the principal at each campus.  Educ. Code §§ 23.26, 23.28(a).  We believe that the principal is, therefore, not a public officer for purposes of the nepotism statutes.  Accordingly, a principal may approve the appointment of a teacher or staff member to the principal's campus even though the principal and appointee are related within a prohibited degree under the nepotism statute.  The school board can prevent nepotism at the school level by refusing to send the principal the application of the principal's relative.

Your seventh question is whether a school board may delegate to the superintendent the authority to hire and dismiss employees.  In *Pena*, the court held that pursuant to sections 23.26 and 23.28(a) of the Education Code a school district's board of trustees alone has the right and legal authority to appoint or employ teachers.  *Pena*, 616 S.W.2d at 659.  Even though a board may permit the superintendent to recommend appointments of teachers, the board cannot delegate its authority to hire and dismiss employees.  *See id.*  Similarly, a board cannot avoid the burdens of the nepotism law by delegating to the superintendent the authority to recommend to the school board an applicant the superintendent believes should fill a position the school board has authorized.  *See* Attorney General Opinions DM-2 at 1; JM-1188 at 2.

As a subpart of your seventh question, you ask whether, for purposes of the nepotism statute, contract employees differ from at will employees.  In numerous opinions and letter advisories, this office has stated that contract employees who lose their positions because of the nepotism law may remain employed for the

---

(footnote continued)

qualifications.  Sixth, and finally, the assessor-collector's compensation is fixed by agreement between the board and the appointed assessor-collector.  *Id.*

remainder of the employee's contract term, while at will employees may remain employed only for the remainder of the pay period. *Compare* Attorney General Opinion V-785 at 5 (regarding contract employee) *with* Attorney General Opinion O-1408 (regarding at will employee); Letter Opinion No. 89-53 (same).

Your eighth question is, in essence, whether the nepotism law applies to independent contractors. We recently answered this question in Attorney General Opinion DM-76 (1992), in which we stated that "the nepotism law applies whenever a governmental body hires a natural person, whether as an employee or as an independent contractor." Attorney General Opinion DM-76 at 2-3. We reaffirm that conclusion here.

## S U M M A R Y

The nepotism statute, V.T.C.S. article 5996a, permits an employee to retain a promotion he received over six months before his mother was elected to the school board of trustees, if she was elected at an election other than the general election for state and county officers. However, the employee could not retain a promotion he received less than six months before his mother was elected to the school board of trustees. The school board, with the employee's mother as a member, could promote the employee to a higher paid position so long as the mother does not participate in the deliberation or voting on the promotion.

A school district may settle a lawsuit by agreeing to pay back wages to an employee the district determines would have received a promotion but for the board's discriminatory treatment, even though the employee's mother presently sits on the board. The board only may pay back wages for the length of time the employee would have held the promotion; thus, if his mother's election to the board would have resulted in his loss of the promotion, he can receive back wages only for that period of time that he actually would have held the promotion. The mother cannot participate in the board's deliberations or voting on whether to settle by agreeing to pay back wages.

A school board employee may retain his or her position after the employee marries a relative of a board member,

thereby coming within the scope of the nepotism statute, if the employee was continuously employed for six months before the election of the related board member.

The nepotism statute does not apply to campus principals. Thus, a principal may approve an applicant within a prohibited degree of consanguinity or affinity to work at the principal's campus; however, the board may not employ a person related to any board member within a prohibited degree of consanguinity or affinity.

The nepotism law applies to independent contractors as well as employees.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General