

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 21, 2003

Mr. Kenneth James
Chair, Board of Regents
Stephen F. Austin State University
P.O. Box 6078
SFA Station
Nacogdoches, Texas 75962

Opinion No. GA-0073

Re: Whether chapter 573 of the Texas Government Code precludes the Stephen F. Austin State University Board of Regents from employing the university president's spouse (RQ-0004-GA)

Dear Mr. James:

Your predecessor asked whether the Stephen F. Austin State University Board of Regents may hire the university president's spouse as an employee or independent contractor without violating the nepotism provisions in chapter 573 of the Texas Government Code.[1] As we understand it, the board has not considered the spouse as a candidate for a specific position, but she might be considered for a faculty, administrative, or professional position.[2]

As the Request Letter notes, noncompliance with the nepotism statutes may subject the appointing officer to severe consequences including removal from office and criminal sanctions. *See* TEX. GOV'T CODE ANN. §§ 573.081, 573.084 (Vernon 1994); *Bean v. State*, 691 S.W.2d 773, 776 (Tex. App.–El Paso 1985, writ ref'd); Tex. Att'y Gen. Op. No. JC-0558 (2002); Request Letter, *supra* note 1, at 2. The nepotism statutes apply to "public officials," defined as:

> (A) an officer of this state or of a district, county, municipality, precinct, school district, or other political subdivision of this state;
>
> (B) an officer or member of a board of this state or of a district, county, municipality, school district, or other political subdivision of this state; or
>
> (C) a judge of a court created by or under a statute of this state.

---

[1]*See* Letter from Michael W. Enoch, Board Chair, Stephen F. Austin State University Board of Regents (Nov. 25, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

[2]Telephone interview with R. Yvette Clark, General Counsel, Stephen F. Austin State University (Mar. 13, 2003).

TEX. GOV'T CODE ANN. § 573.001(3)(A)-(C) (Vernon 1994). The code proscribes nepotism by public officials, whether acting individually or as a member of a board:

> A public official may not appoint, confirm the appointment of, or vote for the appointment or confirmation of the appointment of an individual to a position that is to be directly or indirectly compensated from public funds or fees of office if:
>
> > (1) the individual is related to the public official within a degree described by Section 573.002; or
> >
> > (2) the public official holds the appointment or confirmation authority as a member of a state or local board, the legislature, or a court and the individual is related to another member of that board, legislature, or court within a degree described by Section 573.002.

*Id.* § 573.041. By its terms, then, the nepotism statute applies only to officials with appointment or confirmation power. *See id.*; *Pena v. Rio Grande City Consol. Indep. Sch. Dist.*, 616 S.W.2d 658, 659-60 (Tex. Civ. App.–Eastland 1981, no writ).

We examine the Education Code to determine whom the legislature empowered with hiring authority at Stephen F. Austin State University ("SFA"). *See* Tex. Att'y Gen. Op. No. DM-163 (1992) (authority granted under enabling act of municipal housing authority determined executive director's status as a public official subject to nepotism laws). Chapter 101 of the Education Code establishes SFA and governs its affairs. TEX. EDUC. CODE ANN. §§ 101.01-.42 (Vernon 2002). The code vests the control and management of the university in a board of regents, appointed by the governor with the senate's advice and consent. *Id.* § 101.11. The legislature gave the SFA board the same powers and duties that the board of regents of the Texas State University System possesses. *Id.* § 101.41.[3] Consequently, the code gives the board the following general authority and responsibility:

> (a) The board is responsible for the general control and management of the universities in the system and may . . . employ and discharge presidents or principals, teachers, treasurers, and other employees; fix the salaries of the persons employed; and perform such other acts as in the judgment of the board contribute to the development of the universities in the system or the welfare of their students.

---

[3]Section 101.41 refers to the Texas State University System's former name, the State Senior Colleges System. *See* Act of May 29, 1975, 64th Leg., R.S., ch. 434, 1975 Tex. Gen. Laws 1159 (changing name). The Texas State University System presently includes Sul Ross State University, Angelo State University, Southwest Texas State University, Sam Houston State University, and Lamar University. TEX. EDUC. CODE ANN. §§ 96.01-.707 (Vernon 2002).

(b) The board has authority to promulgate and enforce such rules, regulations, and orders for the operation, control, and management of the university system and its institutions as the board may deem either necessary or desirable. When a power is vested in the board, the board may adopt a rule, regulation, or order delegating such power to any officer, employee, or committee as the board may designate.

*Id.* § 95.21. The code mandates that the SFA board "shall select the president of the university," but does not state criteria for the office or endow it with any particular powers or responsibilities. *Id.* § 101.16. Other than the board, the code does not invest any office or entity with the authority and responsibility for hiring employees or contracting for services. Although the board has the authority to delegate its powers, according to the Request Letter, "the SFA Board of Regents retains statutory hiring authority for all University employees." Request Letter, *supra* note 1, at 2.[4]

Because the legislature has vested hiring authority exclusively in the SFA board, its members are public officials subject to the nepotism statute. *See* TEX. GOV'T CODE ANN. § 573.001(3)(B) (Vernon 1994); Tex. Att'y Gen. Op. No. LA-148 (1977). Because the president is not a member of the board and assuming no board members are related to his spouse, the board may employ her without violating the nepotism statute. *See* TEX. GOV'T CODE ANN. § 573.041 (Vernon 1994).

The Request Letter does not state whether the president plays a role in the hiring process. Nonetheless, we conclude that he is not a public official under the nepotism statutes. In *Pena*, the court concluded that because the board of trustees had exclusive authority to employ teachers, the superintendent who made recommendations was not a public official subject to the nepotism statute. *See Pena*, 616 S.W.2d at 659-60. The court relied on the standard for determining one's status as a public officer articulated in *Aldine Indep. Sch. Dist. v. Standley*, 280 S.W.2d 578 (Tex. 1955), that is, whether the superintendent could exercise a sovereign function of the government largely independent of the board's control of others. *See Pena*, 616 S.W.2d at 659-60. The court concluded that the superintendent was not a public officer because he "merely perform[ed] functions delegated to him by the trustees who do not by such delegation abdicate their statutory authority or control." *Id.* at 660.

If the president of SFA exercises any role in hiring university employees, he does so only as an employee and not as a public official. *See* TEX. EDUC. CODE ANN. § 95.21 (Vernon 2002); Tex. Att'y Gen. LO-96-080, at 2 (chancellor of Texas Tech University, as "chief executive officer," is not a "public officer" but acts subject to direction and control of board of regents). And as an employee, the president is not subject to the nepotism statute with respect to employment decisions about another employee. *See Pena*, 616 S.W.2d at 660.

---

[4]*See* STEPHEN F. AUSTIN STATE UNIVERSITY, UNIVERSITY POLICY AND PROCEDURES, D-20.5 (revised Jan. 28, 2003) (stating that SFA Board of Regents retains final approval of appointment and termination of faculty and administrative or professional staff), *available at* http://www.sfasu.edu/upp/pap/general_regulations/items_BOR_approval.html.

We confine our opinion to the reach of the nepotism statutes in chapter 573 of the Texas Government Code.[5] We conclude that chapter 573 does not prohibit the Stephen F. Austin State University Board of Regents from employing the university president's spouse.

---

[5]We do not consider, for instance, whether any hiring decision would violate SFA's nepotism policy. *See* STEPHEN F. AUSTIN STATE UNIVERSITY, UNIVERSITY POLICY AND PROCEDURES, E-33 (revised Jan. 28, 2003), *available at* http://www.sfasu.edu/upp/pap/personnel_services/nepotism.html.

## S U M M A R Y

Chapter 573 of the Texas Government Code does not preclude the Stephen F. Austin State University Board of Regents from employing the university president's spouse.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee