In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

NO. 09-15-00035-CV
_____

**STEPHEN DAWSON, Appellant**

**V.**

**WELLS FARGO BANK NATIONAL ASSOCIATION, Appellee**

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-01-00965-CV**

## MEMORANDUM OPINION

Stephen Dawson (Dawson) appeals the trial court's judgment granting Wells Fargo Bank National Association's Motion to Confirm Arbitration Award and denying Dawson's Motion to Vacate Arbitration Award. In two appellate issues, Dawson argues that (1) "the arbitrator panel's failure to take an Oath of Office, Anti-Bribery Statement, and secure proper 'Notice of Appointments' renders their Arbitration Award void[,]" and (2) Dawson was unaware "of the fatal defects regarding the arbitrator's lack of authority until after [the] arbitration proceedings

1

finished," and therefore he should be able to "bring a collateral attack" in this appeal. We affirm the trial court's judgment.

BACKGROUND

In 2005, Wells Fargo Bank National Association (Wells Fargo) entered into a credit agreement establishing a $5,000,000 loan from Wells Fargo to TCB Holding Company. The note was amended and restated several times, resulting in an amended note in the amount of $7,165,869.01 and an amended credit agreement. As security for the amended note, Dawson and two other individuals (collectively "plaintiffs") personally guaranteed payment of certain amounts of indebtedness under the amended note. According to Wells Fargo, TCB Holding Company defaulted on the amended note, and the plaintiffs, as guarantors, did not pay the amounts due under the guaranty agreements after Wells Fargo demanded payment.

In January 2013, plaintiffs filed a suit against Wells Fargo and Nicholas Schoolar (collectively "defendants") for declaratory judgment and asserting claims for fraud and fraudulent inducement regarding the plaintiffs' personal guaranties on the amended note with Wells Fargo. The plaintiffs requested that the trial court declare the parties' rights and obligations pursuant to the guaranty agreements and declare that (1) the guaranty agreements are void for lack of consideration and are

2

illusory and unconscionable, (2) the guaranty agreements are void because of defendants' fraud and fraudulent inducement, and (3) plaintiffs owe no obligation to Wells Fargo under the guaranty agreements. The petition further alleged that the defendants made false representations to the plaintiffs to induce them into signing the guaranty agreements, that the plaintiffs relied on the false representations when they entered into the guaranty agreements, and that the plaintiffs' reliance on the false misrepresentations caused plaintiffs' injuries for which they are seeking damages from the defendants.

On March 20, 2013, Wells Fargo filed a Demand for Arbitration with the American Arbitration Association (AAA) against plaintiffs. On March 22, 2013, Wells Fargo filed its Motion to Compel Arbitration and Stay Proceedings Pending Arbitration with the trial court. In the motion, Wells Fargo alleged that pursuant to the language of the guaranty agreements, plaintiffs consented to binding arbitration of all claims, disputes, and controversies arising out of or relating to the guaranty agreements upon demand of Wells Fargo. According to Wells Fargo, plaintiffs executed a valid and binding agreement to arbitrate, plaintiffs' claims must be submitted to arbitration, and the Federal Arbitration Act (FAA) governs because Wells Fargo and the plaintiffs agreed that the arbitration would be governed by the FAA, and because the guaranty agreements affect interstate commerce. Wells

3

Fargo also alleged in the motion that the plaintiffs' claims are within the scope of the arbitration agreement. The trial court granted the motion and ordered the parties to arbitrate "the claims alleged by Plaintiffs in their Original Petition, Suit for Declaratory Judgment and Request for Disclosure."

The appellate record includes a copy an email to the parties from the AAA with a copy of the Notice of Appointments/Arbitrator's Oath signed by arbitrators William Lemons (Lemons), Robert Kelly (Kelly), and D.M. Freedman (Freedman). The email requested that "Comments/objections should be sent to [the AAA representative] no later than July 8, 2013." The record also includes a copy of the guaranty agreement signed by the parties. In the guaranty agreement, the parties expressly agreed to submit their disputes to arbitration, and therein they agreed that the Federal Arbitration Act controlled and that the arbitration would be conducted by the AAA or such administrator as the parties shall mutually agree, in accordance with the AAA's commercial dispute resolution procedures. With respect to the qualifications of the arbitrator, the guaranty agreements expressly provided

> (d) Arbitrator Qualifications and Powers. Any arbitration proceeding in which the amount in controversy is $5,000,000.00 or less will be decided by a single arbitrator selected according to the Rules, and who shall not render an award of greater than $5,000,000.00. Any dispute in which the amount in controversy exceeds $5,000,000.00 shall be decided by majority vote of a panel of three arbitrators . . . . The

4

arbitrator will be a neutral attorney licensed in the State of Texas with a minimum of ten years' experience in the substantive law applicable to the subject matter of the dispute to be arbitrated. The arbitrator will determine whether or not an issue is arbitratable and will give effect to the statutes of limitation in determining any claim. In any arbitration proceeding the arbitrator will decide (by documents only or with a hearing at the arbitrator's discretion) any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication. The arbitrator shall resolve all disputes in accordance with the substantive law of Texas and may grant any remedy or relief that a court of such state could order or grant within the scope hereof and such ancillary relief as is necessary to make effective any award. The arbitrator shall also have the power to award recovery of all costs and fees, to impose sanctions and to take such other action as the arbitrator deems necessary to the same extent a judge could pursuant to the Federal Rules of Civil Procedure, the Texas Rules of Civil Procedure or other applicable law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy shall not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests such action for judicial relief.

The arbitration began on May 13, 2014, and concluded on May 15, 2014, and Lemons, Kelly, and Freedman served as arbitrators. The arbitration award dated September 19, 2014, stated that each plaintiff is liable to Wells Fargo for the sum of $2,250,000, and that they were jointly and severally liable to Wells Fargo in the amounts of "$456,176.50 in reasonable and necessary attorneys' fees[,]" and "58,230.65 in reasonable and necessary litigation expenses and costs incurred[.]"

The arbitration award also awarded Wells Fargo pre-judgment and post-judgment interest.

On October 14, 2014, Dawson, who was initially represented by an attorney during the arbitration, filed a *pro se* Petition to Vacate the Final Arbitration Award, asserting for the first time that the arbitrators should have filed an "Oath of Office" and an "Anti-Bribery Statement" with the Texas Secretary of State. Dawson also objected for the first time to the notarizations of the AAA Notice of Appointments for Lemons and Kelly alleging form defects in the notarization of the notices. According to Dawson, arbitrators Lemons, Kelly, and Freedman should have been disqualified from serving until they complied with "the Texas Constitution, the Texas Government Code, and AAA bylaws requiring [them] to take a proper Oath of Office and anti-bribery Statement."

On October 27, 2014, Wells Fargo filed its Motion to Confirm Arbitration Award and Response to Stephen Dawson's Petition to Vacate Final Arbitration Award. Therein, Wells Fargo argued that the arbitrators were not required to file an "Oath of Office" or an "Anti-Bribery Statement" under the Texas Constitution because the arbitrators were not appointed by the State. On December 16, 2014, the trial court granted Wells Fargo's Motion to Confirm Arbitration Award, denied Dawson's Petition to Vacate Arbitration Award, and entered a final judgment.

In Dawson's first issue, he argues the arbitrators, in failing to take a proper Oath of Office, exceeded their powers, and therefore the arbitration award may be vacated under the FAA pursuant to 9 U.S.C. § 10(a)(4). He asserts that "[u]nder the Texas Constitution, case law, and the Texas Government Code, official acts of appointed officers that do not take the Oath of Office and Anti-Bribery Statement are void." In arguing that the arbitrators are required to file an Oath of Office and Anti-Bribery Statement, Dawson cites to article XVI, section 1 of the Texas Constitution, section 601.008(c) of the Texas Government Code, the AAA bylaws, and *Aldine Independent School District v. Standley*, 280 S.W.2d 578, 583 (Tex. 1955).

> Article 16, section 1 of the Texas Constitution provides the following:
>
> (a) All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation:
>
> "I, _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God."
>
> (b) All elected or appointed officers, before taking the Oath or Affirmation of office prescribed by this section and entering upon the duties of office, shall subscribe to the following statement:

"I, _____, do solemnly swear (or affirm) that I have not directly or indirectly paid, offered, promised to pay, contributed, or promised to contribute any money or thing of value, or promised any public office or employment for the giving or withholding of a vote at the election at which I was elected or as a reward to secure my appointment or confirmation, which the case may be, so help me God."

Tex. Const. art. XVI, § 1(a), (b). Section 601.008(b) of the Texas Government Code states that "[a] person who has not been elected or appointed to an office or has not qualified for office, as prescribed by Subsection (a), is not entitled to . . . exercise the powers or jurisdiction of the office." Tex. Gov't Code Ann. § 601.008(b) (West 2012). Subsection (c) provides that "[t]he official acts of a person who claims a right to exercise the power or jurisdiction of an office contrary to this section are void." *Id.* § 601.008(c). According to Dawson, the AAA bylaws state that each arbitrator "may take an oath of office and, if required by law, shall do so." Dawson contends that the arbitration panel consisted of "appointed officers" under Texas law and that "[t]here is no doubt that under the Texas Constitution each arbitrator must take an oath of office and anti-bribery statement." Dawson conflates the provisions of Article XVI, section 1 of the Texas Constitution with the rules governing arbitration.

Dawson fails to cite to any binding authority, nor are we aware of any such authority, that applies the oath requirement in article XVI, section 1 of the Texas

8

Constitution to arbitrators. Dawson argues on appeal that "[r]elevant case law overwhelms Wells Fargo's argument [that arbitrators are not required under the Texas Constitution to file an oath of office or an anti-bribery statement] because, [under *Aldine Independent School District v. Standley*,] 'the determining factor which distinguishes a public officer from an employee is whether any sovereign function of the government is conferred upon the individual to be exercised by him for the benefit of the public largely independent of [the control of others].'" *See Aldine*, 280 S.W.2d at 583. According to Dawson, "*Aldine* makes perfectly clear that the act of adjudicating a dispute such as a Judge would do" is a sovereign function of the government conferred upon the individual to be exercised by him for the benefit of the public largely independent of others' control. We disagree.

In *Aldine*, L.B. Standley, the former tax assessor-collector for the Aldine Independent School District, filed a claim against the school district seeking seven months' salary, claiming that he was a public officer and that the school district lacked the power to discharge him until the end of his two year term. Standley alleged that prior to February 1, 1950, he was appointed by the Board of Trustees as assessor-collector of taxes for a period of one year, beginning February 1, 1950, to receive a monthly salary, that he gave the bond required by the School trustees, and that he took the proper oath of office and entered upon the discharge of the

9

duties of his office. Standley pursued an administrative claim with the State Board of Education and he was denied any relief. In his suit before the district court, Standley claimed that he was a public officer under the provisions of Article XVI, Section 30 of the Texas Constitution, and that as such his term of office was fixed at two years, and the school board had no power to discharge him until the end of his term, except as is provided by Article V, Section 24, of the State Constitution. He further argued that under Article V, Section 24, "County Judges, county attorneys, clerks of the District and County Courts, justices of the peace, constables, and other county officers, may be removed by the Judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing and the finding of its truth by a jury." The trial court denied any relief to Standley and on appeal the Court of Civil Appeals reversed and rendered a judgment for Standley.

The Texas Supreme Court reversed the Court of Appeals and rendered judgment for the school district. The school district had the authority to discharge Standley. He was not a "public officer" but an agent or employee of the school district. 280 S.W.2d at 582. In analyzing the nature of Standley's position the Court noted that Standley's power was not equivalent with the school board trustees, and only the school board could actually levy taxes. The Court cited with

10

approval a quote from a Court of Civil Appeals opinion that examined various definitions of a public officer: "'it is apparent, we think, that the determining factor which distinguishes a public officer from an employee is whether any sovereign function of the government is conferred upon the individual to be exercised by him for the benefit of the public *largely independent of the control of others.'* (Emphasis added.)" *Id.* Although the assessment and collection of taxes is generally part of the sovereign power of the State, "this power is lodged by the Legislature and Constitution in the school board, and not in the office of the assessor-collector. He is but an agent or employee of the Board to discharge the clerical duties necessary to carry out the school board's powers of taxation." *Id.* at 583. The analysis and holding in *Aldine* does not support Dawson's argument in this appeal. In the context of this arbitration proceeding, we conclude that the arbitrators are not "public officers."

"Arbitrators derive their power from the parties' agreement to submit to arbitration." *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 21 (Tex. 2014) (citing *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex. 2009)). They have no independent source of jurisdiction apart from the parties' consent." *Id.* (citing *I.S. Joseph Co. v. Mich. Sugar Co.*, 803 F.2d 396, 399 (8th Cir. 1986)). "[A]rbitrators must be selected pursuant to the method specified in the parties' agreement." *Id.* Dawson

does not allege and the record does not indicate that the arbitrators were selected or appointed in violation of the parties' agreement. The AAA appointed a panel of three arbitrators to decide the controversy between the parties to the arbitration agreement. Additionally, Dawson does not allege that the arbitrators were biased or that their decision was the result of fraud. Rather, he claims there was a defect in the oath that was taken by the arbitrators.

Unlike "public officers" who are appointed by the Governor or elected officials, arbitrators benefit the parties to the arbitration agreement—not the public. Arbitrators do not have a sovereign function that is otherwise independent of the control of others. They serve as per the arbitration agreement of the parties and once the arbitration panel issues an arbitration award the award is then confirmed by a trial court. The arbitrators were appointed by the AAA to decide the controversy pursuant to the parties' contract and their service as arbitrators does not make them "public officers" even under the standard outlined in *Aldine*. Under the AAA rules, the arbitrators "may take an oath" but the law does not require them to take the oath of office and anti-bribery statement as outlined in Article XVI, Section 1. We overrule issue one.

As to Dawson's objections to the notarization of the AAA Notice of Appointment and oath as taken by the arbitrators, we conclude that Dawson

12

waived such objections by not raising them in a timely manner prior to the deadline set by the AAA. Dawson contends he lacked "actual or constructive notice of the fatal defects until after the waiver period" and he "was never notified by his attorneys at the time of any waiver period in which to challenge the proceedings." However, an attorney's knowledge or notice acquired during the existence of the attorney-client relationship and while acting within the scope of his authority is imputed to the client. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006) (citing *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986)); *McMahan v. Greenwood*, 108 S.W.3d 467, 480-81 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Lehrer v. Zwernemann*, 14 S.W.3d 775, 778 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Furthermore, to the extent that Dawson claims he should be allowed to raise a collateral attack on appeal he has failed to demonstrate a basis for such claim. Additionally, because we conclude that the "Oath of Officer" and the "Anti-Bribery Statement" required of state-appointed officers pursuant to Article XVI, section 1 of the Texas Constitution does not apply to arbitrators, he has no "constitutional challenge." Issue two is overruled.

We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on August 6, 2015
Opinion Delivered December 23, 2015

Before Kreger, Horton, and Johnson, JJ.

14